## No. 10,140.

## SHAFFER *v.* THE STATE.

CRIMINAL LAW.—*False Pretences.*—*Token and Writing.*—*Letter of Agency not Assignable.*—An appointment as agent to sell corn is not assignable; and, being bound to know this, the assignee has no right to rely upon a representation that the transfer would vest in him the title to the corn or the power to sell it.

SAME.—A false pretence, token or writing must be of a nature to deceive, such as the victim, under the circumstances, may rely on.

SAME.—*False Use of Genuine Writing.*—A false use of a genuine writing is not

the use of a false token or writing, within the meaning of section 2204, R. S. 1881; as, for example, where A., under a letter of authority, had sold B.'s corn, and afterwards, by means of the same letter, made another sale to another purchaser.

SAME.—*Indictment.—Uncertainty.*—An indictment which is uncertain in respect to whether it charges a sale of corn, or a transfer by the defendant of a letter of authority to sell the same, is not good.

From the Wabash Circuit Court.

*A. B. Shiveley, B. M. Cobb* and *B. F. Ibach,* for appellant.

*D. P. Baldwin,* Attorney General, *M. Good,* Prosecuting Attorney, *C. W. Watkins,* Prosecuting Attorney, and *J. C. Branyan,* for the State.

WOODS, J.—The appellant was indicted in the Huntington Circuit Court, under section 288 of the act defining public offences, R. S. 1881, sec. 2204, for obtaining money by means of a false token or writing. The indictment was in three counts, but the court sustained the appellant's motion to quash the third, and, overruling the motion as to the first and second counts, granted a change of venue to Wabash county, where, upon trial by a jury, there was a general verdict of guilty, upon which the appellant was sentenced to the State prison for the period of two years and to pay a fine of $10.

Upon exceptions properly saved, and assigned as error, it is insisted that the court erred in overruling the motion to quash the first and second counts of the indictment, and in other specified particulars.

The first count of the indictment charges that Samuel Shaffer, at the county of Huntington and State of Indiana, on the 13th day of October, A. D. 1881, did feloniously, designedly and falsely pretend and represent to Samuel T. Morgan, that a certain order or token in writing, which he then and there had, purporting to be signed by one Robert Walburn, and dated about the 1st day of October, 1881, and directed to Samuel Shaffer, and authorizing him to sell the interest of Walburn in and to a lot of corn in said county, a more particular description of the order being impossible, because the

same had been lost or destroyed, then and there gave him, the said Shaffer, power and authority to sell and dispose of a lot, or part interest in a lot, of corn that had been raised on the lands of George Bippus, in said county, for him, the said Walburn; which false pretences the said Shaffer then and there made for the purpose of inducing the said Morgan to deliver to him the sum of $5 in money, for the said interest in said corn as aforesaid, and, relying upon and believing the said false pretences to be true, the said Morgan was then and there induced by reason thereof, on receiving the pretended transfer or sale of such corn, to pay to the said Shaffer the said sum of $5, and the said Shaffer assigned the said order to the said Morgan in writing, the said order being then and there represented by the said Shaffer falsely, fraudulently and feloniously to be good and valid, and that he, the said Shaffer, then and there had full power and right to assign said order, and that, when so assigned, it would give the said Morgan full control and power to dispose of such lot or interest in such corn as aforesaid, by which said false pretence the said Shaffer, with intent to cheat and defraud the said Morgan, feloniously and designedly did obtain the said sum of $5 of said Morgan; whereas, in truth and in fact, the said Samuel Shaffer had no right, power or authority to sell such lot of corn, for the reason that theretofore, to wit, on the 3d day of October, by virtue of the self-same order from said Walburn, he had sold and conveyed the said lot of corn pretended to be sold to the said Morgan, to one Elisha Rosebaugh, and obtained from him the sum of $8, and that, when such sale was made to Rosebaugh, Shaffer's power and authority became invalid and of no effect, and he in truth, at the time of such assignment, transfer and false pretence to the said Morgan, had no authority, and said order and assignment were then and there invalid, as Shaffer well knew, to dispose of the said lot of corn, and all of said pretences were false, as he then and there well knew, etc.

What the exact purpose of the pleader in framing this

count of the indictment was, we find it difficult to determine satisfactorily. Counsel on either side seem to concede that it charges a fraudulent sale to Morgan by the appellant of Walburn's interest in the corn; but the indication is almost, if not quite, as strong, that instead of a sale the parties intended simply a transfer of the order which the appellant had received from Walburn, and by the transfer of which to Morgan, he represented that Morgan would have "full control and power to dispose of such lot or interest" in the corn.

If the intention was a sale by the appellant, by virtue of the power expressed in the order, the averments concerning the order, the representations made by the appellant, and the obtaining of the money thereby, may possibly show the commission of a crime by the appellant; but if a transfer, not of the property, but of the order or power to sell the property only was intended, it would seem to be quite doubtful if any offence is shown. The order given by Walburn to the appellant, as described in the indictment, it is clear, did not vest in the appellant the property in the corn, but simply gave him power to sell it for Walburn, that is to say, made the appellant Walburn's agent for that purpose. This agency he could not transfer to another. Morgan was bound, and is presumed to have known that such transfer could not be made, and, hence, had no right to put any reliance upon the representation of the appellant that it could be done, and when done would give him, Morgan, power to dispose of the property. So that, upon this view of the case, it was entirely immaterial whether the order was genuine or false, or whether the power conferred by it had already been fully exhausted.

The doctrine is familiar and fundamental, that the false pretence, token or writing must have been such as under the circumstances was calculated to mislead, and on which the injured party had a right to rely.

Assuming that the count charges a sale of the corn by the appellant to Morgan, is it good, and, if so, what offence does it charge?

Section 27 of the act defining felonies, approved June 10th, 1852, 2 R. S. 1876, p. 436, reads as follows : -

"Sec. 27. If any person, with intent to defraud another, shall designedly, by color of any false token or writing, or any false pretence, obtain the signature of any person to any written instrument, or obtain from any person any money, transfer, note, bond or receipt, or thing of value ; such person shall, upon conviction thereof, be imprisoned in the State's prison not less than two nor more than seven years, and fined not exceeding double the value of the property so obtained."

The corresponding and only like provision found in the act of 1881, defining public offences, R. S. 1881, p. 413, is as follows :

" Section 2204. Whoever, with intent to defraud another, designedly, by color of any false token or writing, obtains the signature of any person to any written instrument, or obtains from any person any money, transfer, bond, bill, receipt, promissory note, draft or check, or thing of value ; and whoever sells, barters, or disposes of, or offers to sell, barter, or dispose of, any transfer, bond, bill, receipt, promissory note, draft or check, or any thing of value, knowing the signature of the maker, indorser, or guarantor thereof to have been obtained by any false pretence,—shall be imprisoned in the State prison not more than seven years nor less than two years, and fined in any sum not more than one thousand dollars nor less than ten dollars."

While the latter enactment embraces important matter not contained in the former, and changes the penalty in respect to the amount of the fine which may be assessed, it is to be observed that in the first clause of the latter section the phrase " or any false pretence " is omitted ; so that under this section there can be no prosecution for obtaining any money, goods, transfer, note, bill or the like, by false pretence, unless it consist of a false token or writing, nor at all, indeed, unless section 27 is in that respect unrepealed.

The important question thus suggested, we do not find it

necessary now to decide; nor do we indicate any opinion upon it. Conceding for the argument that in respect to false pretences, as distinguished from a false writing or token, the former law is still in force, we are of the opinion that neither count of the indictment charges sufficiently an offence under either section 2204, or under the supposed unrepealed part of section 27.

It is claimed on behalf of the State, and denied by the appellant—assuming that the transaction charged was a sale of the corn—that, the power conferred by Walburn's order having been already exhausted in the making of the alleged prior sale to another, the writing became invalid for further use, and, as used in accomplishing the sale to Morgan, was a false writing in the sense of section 2204, and consequently that the charge is well laid under that section.

To reach this conclusion, however, as it seems to us, involves the extension of the words *false writing* beyond their ordinary and natural meaning, so that the offence would consist not simply in the use of a false writing or token, but would also embrace an unwarranted or false use of writings or tokens conceded to be genuine.

There may perhaps be precedents or analogies in the common law for such a construction, but it is hardly admissible under a system in which crimes and their definitions are purely and exclusively statutory. Besides being contrary to the established rule for the construction of criminal statutes, it is easy to see that the construction contended for might lead to conclusions certainly not contemplated by the Legislature, whereby the criminality of an act would consist not in the intentional use of a false document, but in the misconstruction and improper use of a writing of undisputed genuineness.

The writing in question, as described in the indictment, was not of a doubtful character, and, having already sold the corn by virtue of it, appellant, it is not to be presumed, could have supposed that it gave him power to sell again; and when he

represented that he had the right, under the order, to sell the corn to Morgan, and thereby obtained money, as charged, he committed the offence of obtaining money by false pretence, under section 27, if in force, as supposed, and not by false token or writing, under section 2204—that is, assuming that the count shows a sale of the corn by the appellant to Morgan —the false pretence being the representation that he had authority, under the writing, to make the sale.   The writing was genuine, but the representation was clearly false.   It was the representation of a material existing fact, and, therefore, such as the purchaser had a right to rely on.

But, as already indicated, we are unable to say that the count under consideration charges a sale of the corn by the appellant to Morgan, rather than a mere transfer of the order; and, on account of this uncertainty, if for no other reason, the motion to quash should have been sustained.

The evidence fails entirely to show a sale, and does show an assignment of the order, with an agreement or understanding that Morgan should sell the corn, repay himself the sum of $5 loaned to the appellant, and, deducting the further sum of $5 which the appellant owed him, should account to the appellant for the remainder of the price of the corn.

Excepting that the evidence in the record does not show that the appellant had made a sale to another *before* the transaction with Morgan, it does tend to support the charge made in the second count in the indictment.   The second count of the indictment details the same general facts as those set out in the first count, and charges, as the gist of the offence, that "Shaffer falsely and feloniously represented that he could and would assign, and did then and there assign, said writing to the said Morgan, which would give him, the said Morgan, the right to sell the said lot of corn and receive the proceeds of the same, repay himself," etc., "and return the overplus, if any, to said Shaffer," etc.

It is clear that Morgan had no right to believe such an absurdity.   The misrepresentation consisted in the miscon-

struction of an instrument, too plain to be·misunderstood, and a misstatement of the effect of a transfer of it. If its character had been different, and its meaning uncertain, it could have made no difference, because, in reference to such matters every man must rely upon his own judgment, or resort to his legal adviser for instruction.

The judgment is reversed, with instructions to sustain the motion to quash each count of the indictment.