No. 16,794.

## LITTELL *v.* THE STATE.

CRIMINAL LAW.—*Manslaughter.*—*Murder in the Second Degree.*—*Indictment.* —*Sufficiency of.*—*Statute Construed.*—Section 1746, R. S. 1881, when construed in connection with section 1731, requiring the facts constituting the offense to be alleged, only dispenses with the statement of the "manner in, and means by, which the death was caused" in case of an indictment for murder in the second degree or for manslaughter.

SAME.—*Indictment.*—*Dubious Meaning.*—*Construction.*—*Doubt Given Accused.* —An indictment which is dubious or capable of more than one construction is to be construed most strongly against the State, and all reasonable doubts arising on the indictment are to be given to the accused.

SAME. — *Indictment.*—*Sufficiency.*—*Degree of Certainty.*—*Necessary Facts.*— Where an indictment, when construed most favorably to the State, fails to state with any degree of certainty that the death of the deceased was caused either directly or remotely by the acts charged against the accused, it is insufficient.

SAME.—*Indictment.*—*Surplusage in.*—*Garbling Indictment.*—The principle of law which permits unnecessary and harmless allegations in an indictment to be disregarded as surplusage, does not authorize the court to garble the indictment, regardless of its general tenor and scope, so as to entirely change its meaning.

SAME.—*Instructions to Jury.*—*Oral.*—*When Erroneous.*—*Statute Construed.*— *Section 1823, Subd. 5, R. S. 1881.*—When the court during the trial of a cause, and before argument, orally instructed the jury for what purpose certain evidence was introduced, and, before argument, counsel for defendant requested all instructions be in writing, such instruction was not erroneous, as the statute, section 1823, subd. 5, R. S. 1881, only has reference to instructions to be given to the jury after the argument; but where, under the above conditions, but after the argument, the court orally instructed the jury as to the penalty they were authorized to inflict, in case of a conviction, the giving of the instruction, without reducing it to writing, amounted to reversible error.

From the Decatur Circuit Court.

Littell v. The State.

*W. A. Moore, J. K. Ewing* and *C. Ewing*, for appellant.

*D. A. Myers* and *D. Wilson*, for appellee.

McCABE, J.—The appellant was tried in the court below on a charge of murder in the second degree. There was a verdict of guilty of manslaughter, fixing his punishment at imprisonment in the State prison for ten years, and judgment was rendered on the verdict over a motion for a new trial.

The overruling of appellant's motions to quash the indictment, and for a new trial, are assigned as errors.

The charging part of the indictment is as follows: " That on or about the 8th day of August, 1892, at and in the county of Decatur, and State of Indiana, William Littell did then and there unlawfully, feloniously, purposely, maliciously, but without premeditation, and in a rude, insolent and angry manner, kill and murder one Samuel Littell; and the said William Littell did then and there unlawfully, feloniously, purposely, maliciously, but without premeditation, and in a rude, insolent and angry manner, touch, strike, cut, wound, and wield a knife, which he, the said William Littell, in his hand then and there had and held, at, against, and into the body of the said Samuel Littell, from which mortal wound said Samuel Littell did then and there and thereby languish and die, contrary to the form of the statute, etc."

That part of the indictment which charges that the defendant " did * * * unlawfully, feloniously, purposely, maliciously, but without premeditation, and in a rude, insolent and angry manner, kill and murder one Samuel Littell," at the time and place mentioned, the State's attorney does not contend contains a sufficient statement of facts to constitute an offense. The statute requires, among other things, that the indictment shall contain "A statement of the facts constituting the offense, in plain and concise language, without unnecessary repetition." Section

1731, R. S. 1881. The section defining murder in the second degree reads as follows: " Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, upon conviction thereof, shall be imprisoned in the State prison during life." Section 1907, R. S. 1881.

That for manslaughter reads as follows: " Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter, and, upon conviction thereof, shall be imprisoned in the State prison not more than twenty-one years nor less than two years." Section 1908, R. S. 1881.

Counsel call our attention to another section of the statute, which, by implication, they claim, makes the first part of the indictment good. It reads as follows:

"In an indictment or information for murder in the second degree, or for manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death was caused; but it shall be sufficient in an indictment or information for murder in the second degree, to charge that the defendant did purposely and maliciously, but without premeditation; and in an indictment or information for manslaughter, that the defendant did unlawfully kill the deceased." Section 1746, R. S. 1881.

This section must be construed along with the part of section 1731 above quoted, requiring a statement of the facts in the indictment constituting the offense. Indeed, if section 1746 stood alone and that part of section 1731 above quoted was out of the statute, we should feel impelled to so construe section 1746 as to not dispense with a statement of the facts in the indictment, constituting the offense, because this court has held that the legislature has no power to do so. *McLaughlin* v. *State,* 45 Ind. 338. The section, however, only dispenses with the statement of the

"manner in, and means by, which the death was caused." "Manner" signifies "mode of action, way of performing or effecting anything, method, style," that is, it is unnecessary to state how he held his gun, or what particular style he had in holding or wielding the knife or other weapon with which the offense is committed, nor need it be stated whether his manner was vicious, cruel, savage or otherwise, and the like. "Means" is defined as "that through or by the help of which an end is attained; an intermediate agency or measure." That intermediate agency or measure, such as what the gun was loaded with, whether with leaden ball or iron slugs, or something else, or that the revolver was loaded with cartridges or something else; what particular kind of a gun, revolver or knife was used, or how long, how deep, how wide the wound was, or other description thereof need not be stated in the indictment. *Dukes* v. *State*, 11 Ind. 557. But that does not mean that the facts constituting the offense need not be stated in the indictment. "But," says the concluding clause, "it shall be sufficient in an indictment or information for murder in the second degree to *charge* that the defendant did purposely and maliciously, but without premeditation; and in an indictment or information for manslaughter, that the defendant did unlawfully kill the deceased." This part of the section points out what shall constitute a sufficient *charge* of the offenses therein mentioned, but does not provide what facts shall be stated in the indictment to make the *charge* of the offenses sufficient. That had already been provided by that part of section 1731 above quoted. So that we conclude that the indictment must state the facts constituting the offense. Does that part of the indictment under consideration do so?

This court has decided that "It is not sufficient to state, in an indictment, that the defendant has committed a certain specified crime. It must be stated how he committed the crime, by stating the facts and circumstances consti-

tuting the offense. Although as great certainty is not required in many respects, in the mere description of criminal offenses, as formerly, yet, all the substantial allegations necessary to make an indictment good at common law are still required." *State* v. *Record*, 56 Ind. 107; 10 Am. and Eng. Encyc. of Law, 522; 1 Bish. Crim. Proced., sections 599, 600.

The following adjudged cases in this court require that the facts constituting the offense must be stated in the indictment, and they are in point here: *Shepherd* v. *State*, 54 Ind. 25; *McLaughlin* v. *State, supra; Dukes* v. *State, supra; Howard* v. *State*, 67 Ind. 401.

Therefore, we hold that that part of the indictment under consideration does not state facts sufficient to constitute an offense. The other part of the indictment follows, and is separated from the first part by a semicolon. The sense or meaning of either part is in no way aided by considering them together; therefore, if the last part does not state facts sufficient, the whole indictment must fall to the ground. The natural and only legitimate meaning of the language employed in the last part of the indictment is "that the defendant did at the time and place mentioned, unlawfully, feloniously, purposely, maliciously, * * and in a rude, insolent, and angry manner, touch, strike, cut, wound, and wield a knife, which he, the said William Littell, in his hand then and there had and held, at, against, and into the body of the said Samuel Littell, from which mortal wound said Samuel Littell did then and there and thereby languish and die."

That is, it means that the defendant, at the time and place, and in the way specified, did touch a knife, did strike a knife, did cut a knife, did wound a knife, and did wield a knife, which he, the said William Littell, in his hand then and there had and held, at, against, and into the body of the said Samuel Littell, from which mortal wound he died, etc. That is, after charging the defendant

with having touched, struck, cut, wounded and wielded a knife, it charged that he held the knife at, against, and into the body of the deceased.   At least that is one construction of which the language employed is susceptible; and, though the language may be construed to mean that the knife was wielded at, against, and into the body of the deceased, yet, as all reasonable doubts are to be solved in favor of a person accused of crime, an indictment ought to be most strongly construed against the State, where its language admits of more than one construction, and is uncertain or ambiguous.   State v. *Locke,* 35 Ind. 419; *Howard* v. *State, supra; Shaffer* v. *State,* 82 Ind. 221; *Walker* v. *State,* 23 Ind. 61; *Keller* v. *State,* 51 Ind. 111; *Nichols* v. *State,* 127 Ind. 406; *Smith* v. *State,* 125 Ind. 440; *State, ex rel.,* v. *Casteel, Auditor,* 110 Ind. 174; *Pond, Admr.,* v. *Sweetser,* 85 Ind. 144.

But if we adopt the construction most favorable to the State, still the indictment would be insufficient, because it fails to state with any degree of certainty, that the death of the deceased was caused either directly or remotely by the acts charged against the accused.   The statute requires that "the offense charged must be stated with such a degree of certainty that the court may pronounce judgment, upon a conviction, according to the right of the case." Section 1755, R. S. 1881, subd. 5.

The indictment concludes with the statement: "From which mortal wound he * * died." What mortal wound? The indictment does not state that any mortal wound was inflicted by the defendant.   Therefore, it does not state facts enough to show that any homicide was committed, much less that the defendant committed a homicide.   If we attempt to aid the statement as to the "mortal wound," in the latter part of the indictment, by referring it to the allegation of a wound, preceding it in the same part of the indictment, it does not help the State any, because the only language there that can possibly have any reference

to any "wound" is that the defendant, at the time and place, and in the manner specified, " did touch, strike, wound, and wield a knife," etc. That wound is not charged to have been inflicted upon the deceased, but upon the knife. The language following, namely: " Which he the said William Littell, in his hand had and held at, against and into the body of said Samuel Littell," does not charge the infliction of any wound, because the knife could have been held at his body, against his body, and into his body without inflicting any wound. But suppose we so read this part of the indictment as to show " that the defendant wielded the knife at, against, and into the body of the said Samuel Littell, from which mortal wound he died," etc. Still, it would be insufficient because it does not charge that the wielding of the knife at, against and into the body of the deceased inflicted any wound of any kind at all. The State's attorneys claim that the indictment may be upheld by rejecting the surplusage matter in it, and cite the statute which forbids the quashing of an indictment " for any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged." Section 1756, R. S. 1881, subd. 6.

The State's attorneys contend that after eliminating from the indictment all surplusage, it would read as follows, leaving out the formal parts :

" That on or about the 8th day of August, 1892, at and in the county of Decatur, and State of Indiana, William Littell did then and there, unlawfully, feloniously, maliciously, but without premeditation, and in a rude, insolent, and angry manner, wield a knife, which he, the said William Littell, in his hand then and there had and held, at, against, and into the body of· the said Samuel Littell, from which said Samuel Littell did then and there, and thereby languish and die, contrary to the form of the statute, etc."

Counsel seem to suppose that the statute just quoted authorizes the rejection of any word, sentence or part thereof in an indictment, if by so doing the indictment can be made good. It must be remembered that the defendant can not demand the rejection of anything, and the State's right to regard as surplusage any matter in an indictment is not entirely unlimited. The State's counsel rely entirely on two cases to sustain them in this contention. The first one is *Myers* v. *State,* 101 Ind. 379. That was an indictment for forgery of the name "Dr. West," to an order. The indictment charged that it purported to have been made and executed by "one Vincent T. West," whereas the order as set out in the indictment *in haec verba,* purported to be executed by "Dr. West." It was alleged that the Dr. West mentioned in the order was intended to and did mean "Vincent T. West." This court held that the allegation that the forged order purported to be executed by Vincent T. West ought, under the statute in question, to be rejected as surplusage, because the instrument as set out in the indictment did not so purport to be executed, but did purport to be executed by "Dr. West."

This is a fair illustration of the rule as to surplusage. The indictment contained enough after rejecting the erroneous statement about the purport of the instrument "to indicate the crime and person charged," which must be construed to mean a statement of facts sufficient to constitute the offense, and to indicate the person charged therewith.

The other case is *State* v. *McDonald,* 106 Ind. 233. That was an indictment charging an attempt to bribe a township trustee, in the sale to him of school supplies. The charge was that defendant offered to give the trustee a receipt for $19 more than the price of the supplies, thereby corruptly, etc., offering him the sum of $19. It was held that the conclusion as to the $19 in money could be treated as surplusage, because the offering the receipt was

the offense, and not offering the $19 in money, for the whole taken together indicated that no offer of actual money was intended to be charged. Both of these cases serve to aptly illustrate that surplusage is, as the word is defined to mean, "matter in pleading, which is not necessary or relevant to the case." But that does not authorize us to go over a pleading and garble it, picking out a word or sentence here and there, or a part of a sentence, regardless of the general tenor and scope of the pleading, so as to entirely change its meaning.

Mr. Bishop, in his work on Criminal Procedure, says: "Matter unnecessarily stated in an indictment will render it bad, if it shows that no offense was committed, or that otherwise the prosecution is not maintainable; such surplusage can not be rejected." 1 Bish. Crim. Proced., section 482.

Therefore, we are of the opinion that the State can not treat all the matter in the charging part of the indictment as surplusage, outside of the above language claimed by her counsel as the only material parts of the indictment.

But if we were to adopt that theory, still the indictment would be insufficient, because it does not state that the acts charged against the defendant caused the death of the deceased.

Counsel very ingeniously drop out the words "mortal wound," and, instead of the allegation "from which mortal wound said Samuel Littell did languish and die," they make it read, "from which said Samuel Littell * * did then and there and thereby languish and die." From what was it he languished and died? Not any mortal wound, for none is charged if we are to drop out the words "mortal wound." As we have already said, those words refer to no other than a wound inflicted on a knife; at least that construction of the language is as fairly reasonable as any other, and, in such a state of uncertainty, a motion

to quash ought not to be overruled. *Walker* v. *State, supra; Locke* v. *State, supra; Howard* v. *State, supra; Keller* v. *State, supra; Shaffer* v. *State, supra.*

But if there should be a possible doubt in our minds as to whether the trial court erred in overruling the motion to quash, the fact that the judgment must be reversed for the error assigned of overruling the motion for a new trial any way, it would require, in the interest of the correct administration of justice, in the event that the appellant is placed on trial again, that the defects in the present indictment should be obviated by a new pleading on behalf of the State.

The defendant's counsel, "before the commencement of the argument, requested of the court that all instructions should be in writing." The statute provides that such a request so made must be granted. Section 1823, R. S. 1881, subd. 5. The court, over objection and exception of appellant's counsel, during the progress of the trial, verbally instructed the jury for what purpose certain evidence was introduced and that they should consider it for that purpose and no other. There was no error in this, because the statute only applies to instructions to be given to the jury after the argument. *Stanley* v. *Southerland,* 54 Ind. 339. At the conclusion of the argument, the court gave certain instructions in writing, and, after giving said written instructions, the court "orally told the jury that the punishment that they were authorized to inflict upon the defendant, if found guilty of manslaughter, would be not more than twenty-one years nor less than two years."

This very proper instruction had been probably unintentionally omitted from the written instructions, and there was nothing in them embracing the substance of this one. The giving of it without being reduced to writing, under the circumstances, was a reversible error, is so well established in this State that we need only cite some of the cases so holding. *Smurr* v. *State,* 88 Ind. 504; *Bottorff*

v. *Shelton,* 79 Ind. 98; *Bradway* v. *Waddell,* 95 Ind. 170; *Stephenson* v. *State,* 110 Ind. 358.

The judgment is reversed, and the cause remanded, with instructions to the Circuit Court to sustain the motion to quash the indictment, and the clerk is directed to issue the proper order for the return of the defendant from the State prison, to the sheriff of Decatur county, to abide the order of said Circuit Court.

Filed February 16, 1893.

## CONCURRING OPINION.

· HOWARD, J.—I concur in the result to which the court has arrived in this case. Yet, while I admit that the indictment is an awkward and bungling piece of composition, and that it should have been quashed in the court below, still, I think that it contains enough; and that it is sufficiently clear, to a common intent, to charge the crime intended by the pleader, and, consequently, that after verdict it should be held good.

Filed February 16, 1893.

## CONCURRING OPINION.

OLDS, J.—I concur in the conclusion reached reversing the judgment for the reason that the court erred in the giving of oral instructions.

Filed February 16, 1893.