THE STATE OF NEVADA, RESPONDENT, v. JOHN JOSEPH MURRAY, WALTER KISER, AND ANN MARIE KISER, APPELLANTS.

No. 3538

March 1, 1950.                    215 P.2d 265.

132

*Carville & Carville,* of Reno, for Appellants.

*Alan Bible,* Attorney General, *W. T. Mathews,* Special Assistant Attorney General, *Geo. P. Annand* and *Robert L. McDonald,* Deputy Attorneys General, *Leonard Blaisdell,* District Attorney of Mineral County, and *Wm. M. Kearney,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Defendants, who are the appellants here, were found guilty of grand larceny by a jury in the district court of Mineral County, and have appealed from the judgment and from the order denying their motion for a new trial. They assign error in several particulars, but the third assignment of error embraces numerous rulings of the trial court in the admission and rejection of evidence and the fourth and fifth assignments of error include numerous orders of the trial court in giving the

jury instructions over the objections of the defendants and in refusing instructions requested by the defendants. We have then to deal not only with a great number of assignments of error but with a voluminous record made up in the course of a trial lasting some eleven days. The facts are as follows:

Mina, in Mineral County, and Gabbs, to its north in Nye County, are approximately forty-two miles apart and connected by a highway running in a general northerly and southerly direction. Some nine miles north of Mina is Luning. The defendants Mr. and Mrs. Kiser resided at Mina, and defendant Murray lived at a place known as Roberts Roadhouse, some three miles south of Gabbs, where he was engaged as a bartender. About eighteen miles south of Gabbs two large culverts or underpasses were constructed under the highway to carry off flood waters from a canyon or wash known as Petrified Springs Wash, which comes down from the southwest. These two culverts are sufficiently large to permit an automobile to drive through.

About 7:30 p. m., October 30, 1947, one Dale Ritchie, an agent for the Shell Oil Company and residing at Mina, was driving from Mina to Gabbs. As he approached and passed over the culverts he noticed lights shining from the culvert upon the hillside east of the highway. He stopped his car, walked back to the underpass and called down to see if there had been a wreck, and if help was needed. He testifies that the reply was, "No, we are looking for a road out of here." His car, as noted, was facing north toward Gabbs. He returned to his car but before starting, the car in the culvert came out, drove out to the highway, turned in front of him and started south toward Mina. The car was the coupe belonging to the Kisers. Ritchie proceeded a short distance toward Gabbs and saw a bunch of cattle beside the highway, apparently frightened, closely packed together and with their heads up. Ritchie turned his car around to follow the coupe and within the course of a mile or more met the coupe returning toward

Gabbs. Again Ritchie turned on the highway and followed them. The coupe stopped at the Roberts Roadhouse and Ritchie pulled up along side them. Under the rear deck or turtleback of the coupe he saw a butchered beef of which the hind legs and tail were protruding—the cover of the turtleback being partly closed. Murray left the car and had with him two heavy hunting knives which Ritchie demanded and received from him. Murray's hands were bloody. Roberts, the proprietor, came out of the roadhouse and claimed the knives, but Ritchie advised that they could be returned to him in due time. He told Mr. and Mrs. Kiser that they would have to come with him to Mina. As above noted, Mina is in Mineral County while the Roberts place was in Nye County. The Kisers drove to Mina and Ritchie followed in his own car. On arrival, the beef, the knives and the car were delivered to the deputy sheriff at Mina. The deputy sheriff awakened Roland Baker, who had a grocery store and butcher shop at Mina, and the beef was taken from the car and placed in the icebox. Baker removed the heart and lungs which were still in the carcass. The cow was in good condition and the heart and lungs were still warm. It was later removed to a freeze plant at Hawthorne, and the meat was in good condition and fit for human consumption at the time of the trial. The beef was identified as a heifer a little over two years old and belonging to one W. J. Stinson. It was a "leppy" calf whose mother had been killed on the highway, and had been raised on a bottle and was something of a pet.

On the day following the discovery of the defendants with the beef in the Kiser coupe, the officers made an investigation of the premises and followed automobile tracks identified as made by the Kiser coupe through the underpass and westerly and southerly up the Petrified Springs Wash for about a half mile and moccasin tracks circling from a point where the car stopped to a hillside a short distance away where fresh entrails were found. The moccasin tracks were definitely identified

as made by Kiser's moccasins. At the spot was found an empty .22 long rifle shell case and an unexploded .22 long rifle shell of the same make as numerous shells found in the Kiser car and suitable for use in a rifle subsequently found in the Kiser home at Gabbs. No rifle or other firearms were found in the Kiser coupe. The cow had been killed by a .22 calibre bullet that was lodged in the back of the neck just behind the horns and which had apparently penetrated the spinal column and which, as appeared from the powder burns in the hair, had been fired at a range less than ten inches. Blood-stains on the Kiser coupe and on the rear wheels and on the floor of the culvert or underpass where the coupe had stopped indicated that blood had flowed from the carcass. The terrain where the entrails were found was rough and rocky. A direct line from the entrails to the nearest point on the highway was about 300 feet, and the nearest point on the highway from which a man standing by the entrails could be seen was about 630 feet.

Each of the three defendants testified in defense and did not dispute any of the foregoing facts. The Kisers testified simply that they found the dead carcass of the cow about a half mile from the highway, returned to the Roberts place where they borrowed the two hunting knives and that Murray returned with them to assist them in bringing the cow in so that it could be delivered to the proper authorities and its owner notified; that it could be preserved if the meat proved to be good and otherwise could be cooked for dog meat. In support of this, Mr. and Mrs. Kiser related how they had been taking a drive through the country (it being Kiser's day off), had visited a number of places and were on their way home to Mina shortly before sunset when they decided to pursue the old road under the culverts and up the wash for the beauty of the scenery and their fond recollections of the place, for it was there that Mr. Kiser had proposed; that their dog had been permitted to run loose and was barking at a place on the hillside

and that when Kiser went to investigate the cause, he found the heifer dead; that it was bloated and he stuck it in the stomach with his pocketknife; that it smelled badly; that they drove back to the Roberts place and Mr. Roberts ordered Murray to return with them and assist them and gave them the two hunting knives; that they understood that the deputy sheriff of Nye County would be at the Roberts place that evening and that they could deliver the carcass to him; that they drove back in the coupe to the carcass where Murray made an incision in the neck and opened the carcass and Kiser removed the entrails. (It was dark then and Mrs. Kiser held a flashlight to assist in the work. The car lights afforded some light although not shining on the carcass.) That before disemboweling the animal they tried to load it into the coupe but were unable to do so and thought that it could be better done if disemboweled; that they then loaded the cow in the car, drove back, stopped a few moments under the underpass, and returned to the highway where their first intention was to deliver the carcass to the authorities of Mineral County at Mina, but after driving a short distance, decided it was best to turn back and deliver the carcass to the authorities of Nye County at Gabbs, as Murray had in any event to return there to work; that they made no attempt at any kind of concealment; that the hind legs and tail of the beef could be seen protruding from under the rear deck; that they drove up to and parked in front of the Roberts place that was brilliantly lighted; that they did not kill the animal and did not know how it was killed; that they at no time had any firearms with them during their trip; that they at no time had any intention of appropriating the animal to their own use or depriving the true owner of it. It was also shown that during the afternoon another car was seen parked on the highway in the neighborhood of the culverts. A number of witnesses testified to the good reputation of all of the defendants. Appellants' brief describes the animal when found as being "on the verge of putrefaction."

One of the deputy sheriffs testified to Mrs. Kiser's statement as to finding the cow that "stunk to high heaven." Kiser also testified that the cow "smelled pretty bad."

From the fact that the transcript covers almost a thousand pages of testimony it will be seen that the foregoing resumé is indeed brief. We believe however that it presents all of the facts necessary for this opinion. It is apparent that the main facts adduced by the State were not contradicted by the defendants. These include their possession of the butchered animal, their participation in disemboweling it, their position under the highway when Ritchie drove over, their possession of the knives with which the cow was disemboweled, their loading of the animal into the Kiser coupe, their transportation of it to the Roberts place, their surrender of the knives to Ritchie, their ownership of the .22 calibre shells in the car, their use of the flashlight when removing the entrails. Their defense consisted entirely and solely of the absence of any criminal intent. We now proceed to appellants' assignments of error.

■ Point I. It is asserted that the verdict is against the weight of the evidence. In this respect attention is called to the circumstantial nature of the evidence and various discrepancies in the testimony of several of the witnesses. All of this however was a matter for the jury, and it cannot be said that the verdict was not based on substantial evidence.

Point II. Error is assigned in the court's denial of defendants' motion to dismiss at the close of the State's case. This argument is directed particularly to defendant Murray. In this regard it is necessary to examine the amended indictment brought by the grand jury. It reads as follows:

"In the above-named District Court, and the action entitled 'The State of Nevada, vs. John Joseph Murray, Walter Kiser, and Ann Marie Kiser,' the District Attorney, Martin G. Evansen, informs the Court that John Joseph Murray, Walter Kiser, and Ann Marie Kiser,

did on or about the 30th day of October, 1947, commit the crime of grand larceny, a felony, committed as follows, to-wit: Said defendants did feloniously steal, take, and carry away one long yearling heifer cow of the cattle variety, not their own property but belonging to another person and that said defendants did wilfully and unlawfully kill the same animal running at large not their own, the same being situate in the County of Mineral, State of Nevada, all of which is contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the State of Nevada."

The statute under which the offense is charged is sec. 10325, Nevada Compiled Laws, and reads as follows:

"Every person who shall feloniously steal, take and carry, lead, drive or entice away any horse, mare, gelding, colt, cow, bull, steer, calf, mule, jack, jenny, or any one or more head of cattle or horses or any sheep, goat, hog, shoat or pig, not his own property but belonging to some other person; and every person who shall mark or brand, or cause to be marked or branded, or shall alter or deface, or cause to be altered or defaced, a mark or brand upon any horse, mare, gelding, colt, cow, bull, steer, calf, mule, jack, jenny, or any one or more head of cattle or horses, or any sheep, goat, hog, shoat or pig, not his own property but belonging to some other person, with intent thereby to steal the same or to prevent the identification thereof by the true owner, or to defraud; and every person who, with intent to defraud, or to appropriate to his own use, shall wilfully kill any animal running at large, not his own, whether branded, marked or not; and every person who shall sell or purchase, with intent to defraud, the hide or carcass of any animal the brand or mark on which has been cut out or obliterated, shall be deemed guilty of grand larceny, and upon conviction shall be punished by imprisonment in the state prison for any term not less than one year nor more than fourteen years."

It will be noted from the foregoing section that there are four classes or categories, any one of which will support a charge of grand larceny. The first attaches to carrying or leading away the animal; the second to branding or defacing the brand on an animal; the third to killing an animal running at large; and the fourth to the selling or purchasing an animal whose brand has been cut out or obliterated. In each of these four classes the criminal intent must attach. It is contended by counsel that under the indictment as drawn the killing of the cow as well as the taking of it by the defendants was a necessary element of proof, and that it was obvious from the evidence that Murray could have had no part in the killing. We have discussed this point at further length under appellants' Point No. IV, in which appellants assign error in the instructions to the jury, and we have found, as there noted, that the carrying away of the animal with criminal intent was sufficient to support the charge.

■ Point III. Under subdivision A of this point, appellants list six instances in which they contend that evidence was improperly admitted and that it was error to overrule their objections to such evidence. The first applies to the admission of testimony by various witnesses as to statements made by Kiser and Mrs. Kiser upon the ground that Kiser's admissions incriminated his wife and that Mrs. Kiser's admissions incriminated her husband, and that this was an indirect violation of the provisions of sec. 8971, N.C.L., which provides that, "A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent." In neither case was the consent given. It should first be observed that both the husband and the wife testified voluntarily on behalf of all of the defendants. In a strict sense there was no examination of the wife as against her husband or of the husband as against the wife. Secondly, it should be noted that in voluntarily taking the stand, both Mr. and Mrs. Kiser testified almost verbatim to the

so-called admissions testified to by the other witnesses. This had to do with their statements that they had found the cow dead, bloated and smelling, and took it without criminal intent, but for the purpose of delivering it to the proper authorities.

In any event it is clear that the statements made, at the time when both Mr. and Mrs. Kiser were found in possession of the beef, were a part of the *res gestae* and as such were admissible despite the fact that neither could be made a witness against the other. State v. Breyer, 40 Idaho 324, 232 P. 560; Blocker v. State, 118 Tex.Cr. 202, 40 S.W. 2d 803; Cook v. State, 22 Tex.App. 511, 3 S.W. 749. The rule is recognized in 22 C.J.S. Criminal Law, sec. 662, n. 79.

■ It is also asserted under this assignment that no foundation was laid for testimony concerning the statements of the defendants because they were not first warned that their statements might be used against them. This assignment is not well taken. State v. Gambetta, 66 Nev. 317, 208 P.2d 1059.

■■ The second assignment, under subdivision A of point III, attacks in general language, without reference to any particular parts of the record and without specifying the precise nature of the error claimed, the admission of the cow in evidence and the admission of testimony concerning the killing of the cow. The only objection made to the admission of the carcass was that the proper foundation had not been laid. The foundation was, in our opinion, ample. And although the actual killing of the cow was not an essential part of the charge of taking and carrying away the cow, the shooting of the cow, as hereinafter more fully discussed in consideration of the court's instructions to the jury, was a proper circumstance to be considered.

■ The admission of two boxes of shells, a knife scabbard, a single live shell, a slug or bullet taken from the cow, loose shells found in the car, two knives, and shells that were removed from the shell boxes or had fallen out in transit is in each instance assailed as error.

In each instance the objection was made that the proper foundation had not been laid, growing out of the alleged failure of the State to show the condition of these exhibits at various times when they passed through various hands from the date of the alleged crime to the time they were introduced in evidence. In varying degrees these items passed through the hands of the sheriff and his deputies, were mailed to the F.B.I. and thereafter returned, etc. We have carefully read the transcript of the testimony laying the foundation for the introduction of each and every one of these exhibits. It will serve no purpose to review such testimony at length. Suffice it to say that we consider the foundation sufficient in each case. Each item was precisely identified, its connection with the defendants fully established, and its care and presentation by the enforcement officers and its forwarding to and return from the F.B.I. satisfactorily established. Rigid cross-examination of the witnesses by defendants' counsel failed to elicit any indication of any change in condition of any of these articles. (A special assignment of error in the admission of the live- shell is discussed later.)

■ Under the third assignment under subdivision A of this point, appellants attack the ruling of the court in sustaining the witness Ritchie in his refusal to answer the question as to who had "reliably" informed him that there was to be beef brought into Gabbs on the night of October 30, 1947. Counsel make no point of this other than that the defendants were precluded by such ruling from impeaching or refuting this testimony, and that it must be presumed that, if admitted, it would have been favorable to the defendants and unfavorable to the State.

The witness had testified in answer to defendants' counsel on cross-examination that he was going to the Finger Rock Cow Camp and described where this was. Counsel then asked, "Q. And what were you going up there for? A. Because I had been quite reliably informed that there was to be beef brought into Gabbs that night and I was going to the cow camp to notify

the men at the camp." No objection was made to this testimony nor was any motion made to strike it out. Counsel then asked: "Q. Well, who told you that beef was going to be brought into Gabbs that night?" And the witness said that he could not answer as he had given his word not to mention that person's name. He definitely refused to answer the question and the court, on being asked to compel the witness to answer, ruled, "that this particular inquiry is too far collateral to the issues in the case to be legally material." We see no abuse of discretion, under the circumstances, in the court's thus limiting the cross-examination and in refusing to compel the witness to answer.

■ The fourth assignment under this subdivision attacks the testimony of one of the deputies because the latter admitted that his memory had been refreshed during a recess. If the weight of his testimony was diminished by the circumstance, this was a matter for the jury to consider.

■ The fifth assignment under this subdivision complains that the admission of certain testimony in rebuttal was improper. This testimony went to the condition of the beef and was proper rebuttal of the testimony given by Mrs. Kiser that the cow was puffed up and smelled pretty bad.

■ Under the sixth assignment under this subdivision error is assigned for the admission of photographs of the culvert and of the highway near Gabbs. The photographs were properly identified and the foundation fully laid. The only further objection made was that they were not proper rebuttal. The defendants had testified at length in describing the same premises depicted in the photographs and the objection was properly overruled.

■ Subdivision B of point III complains that the court improperly limited the doctrine of *res gestae* in rejecting certain evidence offered by the defendants. They say: "Defendants Kiser testified that they went to Gabbs, that Murray returned to the animal with them,

■

and that knives were obtained. They were not, however, allowed to explain these actions because of the illusive doctrine of *res gestae* formulated by the court." They say further that they were denied the right to show intent. We are not referred to any part of the record in which such offer of proof was made nor have we found any. We may note however that over the objections of the State that intention must be gleaned from a person's actions, the defendants were permitted to testify that they had no intention of depriving the owner of the cow or of stealing her.

Appellants refer to State v. Hall, 54 Nev. 213, 13 P.2d 624, in which this court refused to limit the doctrine of *res gestae* to matters precisely concurrent in point of the time involved in the homicide there considered. It sustained the lower court in admitting evidence of a beating administered by the appellant immediately after the shooting, despite the fact that this also tended to show him guilty of another and distinct offense. The case furnishes no support of the appellants' point. A reading of the entire record indicates no violation of the rule expounded in the Hall case.

Appellants' Point No. IV embraces their exceptions to instructions given by the court. Instruction No. 2 is first attacked. It is in the following words:

"The law of the State of Nevada contains the following provision:

"Every person who shall feloniously steal, take and carry * * * away any horse, mare, gelding, colt, cow, bull, steer, calf * * * or any one or more head of cattle * * * not his own property but belonging to some other person * * * with intent thereby to steal the same, * * * not his own, whether branded, marked or not * * * shall be deemed guilty of grand larceny."

Section 10325, N.C.L., from which the foregoing instruction was taken, is quoted in full earlier in this opinion. Appellants do not question the well-recognized rule that, where not prohibited by statute, the court may in its discretion, in instructing the jury,

quote only such parts of a statute as are relevant and applicable to the case. Appellants complain however that the instruction is "an absolute misstatement of the law and a prejudicial misstatement because of the reference to branding." Much testimony was addressed to the question of brands and earmarks. Under the unquestioned law that a person feloniously stealing a cow belonging to some one else is guilty of larceny, there was no misstatement of law by adding the instruction that such was the case whether the cow was branded or not. If it were true, as contended by appellants, that the court "garbled" the statute, "picking out a word, phrase or sentence here and there, regardless of the general tenor and scope of the statute," we should be prone to agree that appellants have just cause to complain. We do not however find such to be the case.

Instruction No. 3 quoted to the jury that part of the amended information charging the defendants with feloniously stealing, taking and carrying away one long yearling heifer cow, etc., but omitting that part of the information charging "and that said defendants did wilfully and unlawfully kill the same animal running at large," etc. Appellants contend that in such instruction the court "garbled" not only the tenor of the law but also "garbled" the information "in order to sustain a conviction." We have seen that under the statute the felonious killing of a cow running at large on the range is a felony and that the felonious taking and stealing of a cow, regardless of any killing, is likewise a felony. It is obvious that the combination of the killing and taking is not necessary to constitute the crime. In State v. Jones, 7 Nev. 408, in which the indictment did not contain all of the allegations that would have made it conform precisely to the statute, this court held that, as the indictment contained "all the essential facts constituting the larceny—facts which show that the taking was without authority of law, and was unlawful," it was sufficient. Likewise in State v. Phipps, 52 Nev. 115, 282 P. 1024, 1026, where only part of a statute was

included in the court's charge to the jury, this court upheld the same as being "substantially in the language of the statute" defining the offense. The Phipps case and many others are cited in 23 C.J.S., Criminal Law, sec. 1194, p. 743, in support of the general rule that it is not necessary to give the exact language of the statute if the language used defines the crime and embodies all the elements thereof. Such we find to be the case here, and appellants have referred us to no authority suggesting the contrary. The particular objection coincides with appellants' point No. II to the effect that the amended information as drawn required proof by the State that the defendants killed the cow as well as carried her away, and that the court was guilty of prejudicial error in regarding the allegation as to the killing as surplusage. This appears to be the main point raised by appellants, and they cite in support thereof: State v. Cushing, 61 Nev. 132, 120 P.2d 208; State v. Massie, 72 W.Va. 444, 78 S.E. 382, 47 L.R.A., N.S., 679; State v. Leonard, 171 Mo. 622, 71 S.W. 1017, 94 Am.St. 798; and Littell v. State, 133 Ind. 577, 33 N.E. 417. We find nothing in the Cushing case to sustain this contention. In the Massie case it was properly held that the court could not regard as surplusage a part of the indictment which negatived the offense of [72 W.Va. 444, 78 S.E. 383] "obstructing a public road" by allegation of facts showing that it was a private road. So also in the Leonard case the additional matter in the indictment, if true, negatived the allegation of the commission of the offense. The Littell case quotes with approval Bishop on Criminal Procedure to the effect that surplusage in an indictment cannot be rejected "if it shows no offense was committed, or that otherwise the prosecution is not maintainable," [133 Ind. 577, 33 N.E. 420] and distinguished a number of cases in which allegations were properly treated as surplusage. Here the allegation of the killing of the cow in no way negatived the crime of carrying it away. The treatment by the court of the allegation of the killing, as surplusage, left enough to

constitute a valid charge of the offense. The court instructed the jury that the defendants were charged with the felonious stealing of the cow and this was the crime of which they were found guilty.

▮ Instruction No. 4 is as follows:

"If you find from the evidence, beyond a reasonable doubt that on or about the 30th day of October, 1947, in Mineral County, State of Nevada, the defendants, or either of them, did feloniously steal, take and carry away one long yearling heifer cow, not the property of themselves or either of them but belonging to some other person, with intent thereby to appropriate the same to their own use and deprive the owner thereof, then you should find the defendants, or either of them, as the proofs may show, guilty.

"If the elements of the crime are not shown beyond a reasonable doubt, your verdict should be, not guilty.

" 'Feloniously,' means, done with a mind bent on doing that which is wrong, or with a guilty mind."

Appellants' only objection to this instruction is that the sentence "If the elements of the crime are not shown beyond a reasonable doubt, your verdict should be, not guilty," is "an invitation to the jury to make a finding of guilty." We cannot see that such is the case, nor does it appear that this particular sentence could have been prejudicial to the defendants. The instruction is also claimed to be erroneous in eliminating the element of the killing of the cow, a matter that we have heretofore disposed of.

▮ The court's instruction No. 5 definitely instructed the jury that it was unnecessary for the State to prove that any of the defendants killed the cow, "but that the killing of said heifer cow, if you find beyond a reasonable doubt that it was killed, by the defendants or either of them, may be considered by you as a circumstance in connection with all of the evidence in the case." Defendants complain that "after days of testimony about bullets, slugs, powder burns, and other evidence which could do nothing but inflame the passions and prejudices of

a jury," it developed for the first time in the denial of defendants' motion to dismiss that proof of the killing was unnecessary, that such part of the information was surplusage and that the killing could be considered as a circumstance in connection with the charge of taking and carrying away. We are referred to no authorities in support of this contention, and must conclude that none such can be found.

■ Instruction No. 7 was given as follows:

"The jury are instructed that when a man's conduct may be consistently, and as reasonably from the evidence, referred to two motives, one criminal and the other innocent, it is your duty to presume that such conduct is actuated by the innocent motive and not the criminal. This presumption of innocence may be overcome by proof beyond a reasonable doubt."

The inclusion of the last sentence is assigned as error. Appellants assert that this serves only to cloud an otherwise clear and clean-cut instruction. The sentence itself is not claimed to be a misstatement of law, and it is clearly a correct statement of law. It was properly given. It is definitely approved in 53 Am.Jur., 527, Trial, sec. 686. See also Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624.

■ The court gave instruction No. 8 as follows:

"The Laws of Nevada contain the following provision:

"All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried and punished as principals."

Appellants claim that this was particularly prejudicial to defendant Murray and say: "After a reading of this instruction the jury could have no recourse but to find the defendant Murray guilty, which it did." It is claimed also that the instruction is only partly in the wording of the statute, sec. 10869, N.C.L. The portions of the statute not included in the instruction negative any dis-

tinction between an accessory before the fact and a principal, and eliminate the necessity of any other allegation against an accessory than are required against his principal. The inclusion of the entire section in the instruction would have been more damaging to appellant Murray than the part given, and he is in no position to complain.

Appellants also assign instruction No. 9 as error. It was given in the following words:

"In every crime or public offense, there must exist a union or joint operation of act and intention, or criminal negligence.

"Intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused.

"The intent with which an accused person appropriates money or property to his own use is a question of fact to be determined by the Jury from the evidence in the particular case."

It is contended that such general instruction on intent was prejudicial in view of the specific intent required by the statute as quoted in instructions 2 and 4 above discussed. We find no error in the instruction. The use of the words "or criminal negligence" is likewise subject to attack, but we find nothing prejudicial in the use of these words.

Appellants assign as error the giving of instruction 10, which defines the two recognized classes of evidence, namely, the direct or positive testimony of an eye witness and circumstantial evidence. Appellants do not claim that the instruction as given is not good law, but that it indirectly calls the attention of the jury to the killing of the cow. This we have treated elsewhere in our holding that the court was justified in its instruction that evidence of the killing could be considered as a circumstance in connection with the other elements of proof.

Under point V appellants assign error in the

court's refusal to give certain requested instructions. Requested instruction No. 2 covered the necessity of proving intent but was covered by another instruction.

Requested instruction No. 3 was to the effect that none of the defendants could be found guilty unless it was proved beyond a reasonable doubt that they killed the cow, besides taking and carrying her away. As noted, such is the appellants' principal point in this appeal, raised on the motion to dismiss, the motion for new trial, the request for instructions and elsewhere throughout the trial and in the presentation of the appeal to this court. We hold adversely to this contention.

Appellants complain of the court's refusal to give their requested instruction No. 25. This is identical with the given instruction No. 7 heretofore discussed, except that it does not contain the sentence "This presumption of innocence may be overcome by proof beyond a reasonable doubt." As we have approved instruction No. 7 as given, no further discussion is necessary.

Appellants complain of the refusal to give their requested instruction No. 26. It covered the question of intent and would simply have been a matter of repetition. State v. Willberg, 45 Nev. 183, 200 P. 475. Appellants refer us to State v. Ward, 19 Nev. 297, 10 P. 133, but we find nothing in that case to support this assignment of error.

Appellants assign as error the court's refusal to give their proposed instruction No. 27 explaining the duty of the jury with reference to rejected evidence, etc., and its province of weighing the evidence admitted, etc. The only statement in support of the assignment of error is that an identical instruction was given in a federal case in this district. It is however substantially the same as instruction 11 given by the court.

Appellants' requested instruction No. 28 was: "The court instructs the jury that a reasonable doubt may be created by the failure on the part of the state to prove an essential item of its crime." In instruction 12 the court instructed the jury among other things: "The

burden rests upon the prosecution to establish every element of the crime with which the defendant is charged, and every element of the crime must be established beyond a reasonable doubt."

Defendants' requested instructions Nos. 29 and 30, which the court refused, would again have made it necessary for the state to prove that the defendants had killed the cow before a verdict of guilty could be reached. We have heretofore disposed of this phase of the case.

■■■ Point VI. Appellants assign error in the court's denial of defendants' motion to strike the testimony of Deputy Sheriff Vidovich with reference to his picking up a single live shell near the cow between three and four o'clock in the morning under a bush, with the aid of a flashlight, and to strike the admission of the shell in evidence. It was urged that when the witness picked up the shell he thereby destroyed possible latent finger prints thereon. The record does not indicate that this piece of evidence was intentionally tampered with and the fact that it was thus picked up did not render it inadmissible.

■■■ Error is likewise assigned, because the court denied defendants' motion to strike the testimony of the witness Fontaine who examined the carcass of the cow when it was brought in to be placed in cold storage. He was asked if he believed the animal was slaughtered. Having been qualified by the State to express his opinion, he said that the carcass looked to him as if it had been slaughtered. Appellants claim that this was not proper rebuttal, but it is clearly rebuttal of the testimony of the defendants to the fact that the animal was on the verge of putrefaction when they found it. Fontaine's testimony indicated that it was a freshly killed animal that had at least been bled and dressed.

■■■ Under point VII it is said by defendants' counsel that when the jury returned the verdict of guilty it was stated by the foreman that the jury recommended "leniency" or "extreme leniency" for the defendant Murray. The record discloses no recommendation of

leniency. Counsel concede this to be so, but assert that the transcript is "woefully inadequate" and that even though it was returned by appellants to the reporter in July, 1948, for correction and the corrected transcript was not returned by the reporter until December, 1948, it still contained many omissions and inaccuracies, among them being the omission of the recommendation for leniency. The condition of the record is the subject of much discussion in the briefs, and the State, while expressing the desire to adhere to the theory that all cases be heard on their merits, State ex rel. Dept. of Highways v. Pinson, 65 Nev. 510, 199 P.2d 631, 66 Nev. 13, 201 P.2d 1080, assert that the record was neither filed nor served within required periods of time so as to give this court jurisdiction of the appeal. As we have concluded that the judgment must be affirmed, we have not found it necessary to consider at length the respective contentions with reference to the preparation, service and filing of the record. It very patently leaves much to be desired. Counsel for the State do not deny that after the verdict was returned the foreman announced the jury's recommendation for leniency for Murray, but do deny any recommendation of "extreme leniency." But even if the recommendation of leniency appeared in the record, it would not serve appellant Murray. In Kramer v. State, 60 Nev. 262, 108 P.2d 304, appellant urged that when the verdict recommending leniency was returned, it was the trial court's duty to ascertain what was meant and intended, but this court, citing State v. Stewart, 9 Nev. 120, held that the recommendation of leniency constituted no part of the verdict. This, in our opinion, is a complete answer to appellants' contention that the trial court in the instant case should have caused the jury to reconsider its verdict. Nor can we agree with appellants' assertion that the leniency recommendation "negatives the finding of the jury that Murray was guilty beyond a reasonable doubt."

Assignment of error No. VIII refers to the court's denial of the motion for a new trial. Under this assign-

ment no grounds are urged that have not been heretofore discussed.

After all briefs of the parties had been filed, appellants filed a "Petition to have court consider and decide constitutionality of Section 10989, N.C.L.1929; also to correct error prejudicial to defendants' constitutional rights during progress of trial," with brief in support thereof. Respondent served and filed a notice of motion to strike the petition. Upon the submission of the case on the merits of the appeal, the petition and motion were also ordered submitted. The petition had to do with the jury's viewing of the Ford coupe and the cow's carcass in the courtyard of the courthouse. The motion to strike is denied. The petition is also denied. Section 10989, N.C.L., is the section authorizing the court in a proper case to order a view by the jury of "the place in which the offense is charged to have been committed, or in which any other material fact occurred." Neither the section nor its constitutionality or applicability is in any way involved in the case. No view in the sense of the statute was had. The carcass of the cow and the Ford coupe were both marked as exhibits for identification, and later offered and admitted in evidence. Too bulky to be brought into the courtroom, they were left in the courthouse yard in the custody of the sheriff, and there viewed by the jury. They constituted important evidence in the case and were constantly referred to by witnesses both for the State and for the defendants through hundreds of pages of the testimony. A statutory "view" is not taking evidence but is merely to enable the jury more satisfactorily to weigh the evidence given in court. State v. Hartley, 22 Nev. 343, 40 P. 372, 28 L.R.A. 33; State v. Merritt, 66 Nev. 380, 212 P.2d 706. The view of the cow's carcass was at the special request of the defendants, whose request that it be skinned out was also complied with. On one day of the trial the carcass was brought into the courtyard, and the wheels ordered replaced on the Ford coupe, at defendants' request. The

only objection made to the admission of either of these items in evidence was that the proper foundation had not been laid. The foundation was more than ample and the objection was properly overruled. The petition presents for our consideration nothing outside of the limitations of appellants' assignments of error, prejudicial to their rights, duly brought to the attention of the trial court, as disclosed by the record on appeal. State v. McNeil, 53 Nev. 428, 4 P.2d 889; State v. Lewis, 59 Nev. 262, 91 P.2d 820; State v. Merritt, 66 Nev. 380, 212 P.2d 706. The authorities submitted by appellants in support of their petition are not in point. The present case is clearly distinguishable from State v. Merritt, 66 Nev. 380, 212 P.2d 706, both as to the point of law involved and as to the facts. Here there was no question as to the Kisers' ownership of the coupe or the fact that the beef was in possession of all the defendants. In the Merritt case evidence was unlawfully taken out of court without the presence of the defendant, under the claimed sanction of sec. 10989, N.C.L., as part of the proof that the defendant had unlawfully altered the brand on the animal.

We have carefully examined the entire record and all of the points raised by appellants, but we find no prejudicial error and are satisfied that there was ample evidence to sustain the jury's verdict. The judgment and the order denying new trial are hereby affirmed.

HORSEY, C. J., and EATHER, J., concur.

### ON PETITION FOR REHEARING

April 12, 1950.                                    216 P.2d 606.

1. CRIMINAL LAW.
> Recommendation of leniency constituted no part of verdict, and incorrect statement by supreme court in original opinion that record did not disclose a recommendation of leniency was not ground for disturbing judgment of affirmance.

## Rehearing denied.

*Carville* and *Carville,* of Reno, for Appellants.

*Alan Bible,* Attorney General, *W. T. Mathews,* Special Assistant Attorney General, *Geo. P. Annand* and *Robert L. McDonald,* Deputy Attorneys General, *Leonard Blaisdell,* District Attorney of Mineral County, and *Wm. M. Kearney,* of Reno, for Respondent.

## OPINION

*Per Curiam:*

Defendant Murray alone has petitioned for a rehearing. In the original opinion we incorrectly stated that the record did not disclose a recommendation of leniency for Murray. The record does show that the foreman of the jury indicated that the jury did recommend leniency for Murray. Our original opinion later, however, did state that the recommendation of leniency constituted no part of the verdict. State v. Stewart, 9 Nev. 120. With the above correction, the motion for rehearing is denied.