# STATE *v.* McNEIL

No. 2922

November 14, 1931. 4 P. (2d) 889.

*A. Grant Miller, W. R. Gibson* and *H. C. Price,* for
Appellant:

*M. A. Diskin,* Attorney-General; *Wm. J. Forman,* Deputy Attorney-General; and *Walter Rowson,* District Attorney, for the State:

434

## OPINION

By the Court, THOMAS F. MORAN, District Judge:

The various assignments of error relied upon by the appellant will appear as we take them up in our discussion of the case.

■ One of the points that has been well briefed and earnestly argued in this court by appellant is assignment No. 3; that is to say, the alleged error of the trial court in refusing to give defendant's proposed instruction F to

the jury. The instruction in questions reads as follows: "You are instructed that if the person accused use a weapon designed to be deadly and use it in such a manner in which such weapon is ordinarily used to kill, then the law will presume an intention to kill, but if such weapon was not used in the manner designed, that is to say for' shooting, then such presumption is not a presumption of law, but leaves the intent as a question of fact for the jury; and to strike one with the barrel of a pistol instead of shooting him with the weapon, not being the ordinary way of using the weapon for killing, the intention to kill will be a question of fact unassisted by any presumption, and, taken in connection with the other testimony, the presumption may be against an intention to produce death, for having the means of killing, the actor has chosen to avoid that end."

It may be that in certain jurisdictions some parts of this instruction could properly be given, possibly in a case in which the evidence indicated a striking with a loaded gun upon some nonvital part of the body. But we cannot see how it could have been given under the statutes of this state, the decisions of this court, or the evidence in the present case.

■ It is provided in section 9956 of Nevada Compiled Laws 1929, that intention in criminal cases is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused. In the case of State v. Davis, 14 Nev. 410, this court held, in harmony with the statute, that it is the character of the weapon and the manner in which it is used, not the purpose for which it is carried, taken in connection with the facts and circumstances of the assault, that indicates the intention of the party. Thus the whole question of intent to kill, including the query as to the deadliness of the weapon, must be left to the jury, under the particular facts and circumstances of each case, subject, of course, to the usual instruction of the court, giving a legal definition of a deadly weapon. State v. Rigg, 10 Nev. 290; Acers

v. U. S., 164 U. S. 388, 17 S. Ct. 91, 41 L. Ed. 481; People v. Lopez, 135 Cal. 23, 66 P. 965, 966; State v. Archbell, 139 N. C. 537, 51 S. E. 801; State v. Napper, 6 Nev. 113; State v. Buralli, 27 Nev. 41, 71 P. 532.

The case of Delk v. State, 135 Ga. 312, 69 S. E. 541, Ann. Cas. 1912A, 105, cited by appellant as authority for the requested instruction, is not in conflict with the opinions of this court. The decision does not contain a statement of the facts in the case, but merely holds that, under certain conditions, if a given weapon is not used in the ordinary manner in which such a weapon produces death, then the intent to kill is not a presumption of law, but purely a question of fact under the evidence.

In State v. Collyer, 17 Nev. 275, 30 P. 891, Chief Justice HAWLEY properly held that: "When there is any doubt as to whether the instrument used in committing the assault was a deadly weapon, it is a question for the court and jury to decide," which cannot have any other meaning than that the question is one of fact for the jury to determine under proper instructions, as to the statutory · definition of intention, and as to what is legally considered a deadly weapon.

We believe this attitude is eminently sound, for we can easily conceive of many circumstances in which a given weapon could be equally deadly in many ways, regardless of the purpose for which it is mainly intended to be used. For example: A and B are out hunting; A is carrying a loaded rifle; an argument ensues between them; A becomes angry, and strikes B violently on the top of the head with the rifle, and breaks his skull, killing him instantly. Can it be logically contended that A would be entitled to such an instruction as the one offered in the present case, giving him a presumption of mitigation of the offense, merely because he did not choose to shoot with the weapon? If we remember that every person is presumed to intend the natural consequences of his acts, we must answer the question with an emphatic negative. Yet the hypothetical case that we have just propounded is infinitely stronger in favor of the instruction than is the case at bar. We have postulated that

A was carrying a loaded rifle, while in the present case there is no evidence whatever in the record upon which to base an assumption that the pistol wielded by the appellant was loaded. It was properly held in State v. Napper, supra, that no presumption exists that any given gun is loaded. Thus, aside from its other inherent defects, the instruction in question is predicated upon something not in evidence, and rests upon a presumption not recognized by the law of this state.

Under the evidence in this case, the jury evidently found that the weapon as wielded by the defendant was deadly, and that there was an intent to kill. We are not inclined to dispute the deductions of the jury. Although the weapon itself is not in evidence, the record shows that it was a .44 or .45 caliber pistol, and that the defendant struck the deceased with it repeatedly on the face or head with such violence that the victim fell to the ground. The defendant himself admitted that he struck the deceased twice on the face with the gun before the victim fell. Other witnesses testified that the defendant continued to strike the deceased after the latter had fallen.

In view of the foregoing considerations, we must conclude, not only that the requested instruction was properly refused, but also that the giving of it would have been erroneous.

■ We have given particular attention to assignment No. 13, as to the alleged misconduct of the district attorney, which we are urged to consider of such a reprehensible nature as to deprive the defendant of a fair and impartial trial. While we are not indorsing in this opinion everything that was said or done by the district attorney at the trial of this action, we cannot agree with appellant that the officer's conduct was so extreme as to be prejudicial to the defendant, or to warrant a reversal of this case. But, even if the conduct complained of was of the most serious consequence, the appellant could not here, for the first time, be heard to complain. The record does not disclose that any objection was interposed, or exception taken, to the

alleged misquotations, misstatements, or other misconduct of the district attorney during the trial. Neither did counsel for appellant, at the time of the conduct complained of, request the court to admonish the prosecuting officer, or to caution the jury to disregard his unfair conduct. Only after refusal by the trial court to grant such a request of appellant could the appellant urge this court to consider any assignments of error of this nature. State v. Hunter, 48 Nev. 358–367, 232 P. 778, 235 P. 645; State v. Boyle, 49 Nev. 402, 248 P. 48; 16 C. J. 915.

■ The appellant further complains of the district attorney, in that the officer failed to summon all the witnesses who were present at the time and place of the offense, and especially one Inman who visited the district attorney some time before the trial, and who was told by him that he was not needed as a witness. It is true that under the old English rule there was a duty on the part of the prosecuting officer to call as witnesses all persons present at the time of a transaction charged as a crime. But this ancient doctrine has undergone considerable modification in England during modern times, while a great number of American courts, including our own, have consistently looked upon it with disapproval. In the case of State v. Milosovich, 42 Nev. 274, 175 P. 139, it was contended by the defendant in that case that the district attorney was guilty of conduct during the trial necessitating the granting of a new trial, in that he had failed to call one Daisy Reeves, who was present during most of the time when the events leading up to the homicide took place. A number of authorities were cited in that case to sustain the defendant's theory. But this court, in passing on the question, said very positively: "It is not obligatory upon a district attorney to call all of the eyewitnesses to a transaction charged to be a crime." See, also, State v. Barrett, 33 Or. 194, 54 P. 807; Ross v. State, 8 Wyo. 351, 57 P. 924, 929.

■ It has been argued by appellant that certain

portions of the opening statement of the district attorney were prejudicial to the defendant, in that the prosecuting officer promised to prove premeditation by representing the defendant as having waited at the Mizpah Hotel, shortly before the trouble, for Capt. Gordon to appear. But this objection becomes very trivial, in view of the fact that there is some testimony in the record that justifies the statement. But, even if the statement had totally failed of proof, we cannot understand in what manner the defendant in this case has been injured or prejudiced by it. From the fact that the jury returned a verdict of second degree murder, it is evident that the question of premeditation and deliberation was wholly disregarded by the jury, in favor of the defendant. State v. Olivieri, 49 Nev. 75, 236 P. 1100.

■ The appellant also complains, under assignment of Error No. 6, of the refusal of the lower court to grant a motion for a new trial on the ground of newly discovered evidence. It appears from the affidavits before us that the new evidence in question is mainly concerned with facts that tend to contradict the positive testimony of several witnesses for the state, to wit, Dr. Cowden, Sanford Galvin, Walter Bowler, and Ross Moon, to the effect that the victim's right hand was in his right pants pocket when each of these witnesses, respectively, reached the scene of the trouble. Although such evidence would very probably be admissible, it is well established that its mere admissibility is not sufficient, if it does not appear that it possesses the requisite materiality. According to many authorities, including Wharton on Criminal Evidence, vol. 1, p. 272, 273, newly discovered evidence "must be material, and not merely cumulative, corroborative or impeaching." Hence the mere fact that the new evidence would be relevant falls quite short of meeting the requirement on a motion for new trial based on this ground.

■ The same reasoning is contained in State v. Willberg, 45 Nev. 183, 200 P. 475, where it has been

held by this court that, when the new evidence is for the sole purpose of contradicting or discrediting other witnesses, such evidence does not warrant a new trial. The granting of a new trial, furthermore, on the ground of newly discovered evidence, is discretionary with the lower court, and a denial of a new trial upon this ground will not be reversed on appeal unless it clearly appears that the court abused its discretion. The record does not disclose any such abuse.

■ It is contended, under assignment No. 7, that the court erred in allowing the challenge of the prosecution to the venireman Steve Andrews. That this venireman did not come up to the standard required by law to be a juror was made manifest by his answers to questions on voir dire. He stated, according to the transcript, that he could not give both the state and the defendant an impartial hearing; that he was prejudiced, and that such prejudice would remain with him during the trial; that, if he were in the position of the state or the defendant, he would not care to be tried by a jury composed of twelve men in his frame of mind. We cannot conceive of a more complete disqualification of a trial juror than appears from the answers of this venireman as shown by the record. It may be true that on cross-examination his answers tended to contradict his previous statements, but we believe that his very self-contradictions do not increase his fitness as a juryman. Under the circumstances disclosed in the examination of this venireman, we are of the opinion that the court could very properly have excused him, even in the absence of a challenge. Hence the challenge was properly allowed according to section 10945, Nevada Compiled Laws 1929, which provides for disqualification "for the existence of a state of mind on the part of the juror which leads to a just inference, in reference to the case, that he will not act with entire impartiality, which is known in this act as actual bias."

In State v. Kelly, 1 Nev. 224, it is held that: "When there is any probability that a juror is disqualified, and the Court is unable to determine it by reason of its

inability to establish the fact constituting such disqualification, it is not required to hazard the regularity of its proceedings by permitting such person to sit as a juror, but may excuse him at any time before he is charged with the case." See, also, State v. Buralli, 27 Nev. 49, 71 P. 532.

■ Under assignment of error No. 8 the appellant contends that the court erred in sustaining the district attorney's objection to a question propounded to the witness Walter Bowler, thereby shutting off the cross-examination of said Walter Bowler, who was then a witness on the part of the state. The court by its ruling confined the cross - examination strictly to matters brought out in the district attorney's examination of the witness in chief. It appears from the record that the question propounded to. the witness by appellant's counsel was not one on cross-examination, but one to test the memory or credibility of the witness, to wit: "When you arrived there did you see Gordon's car?" There was nothing said about a car on direct examination, and the court was clearly within its exercise of discretion in shutting off the examination as to such matters.

■ The rule is laid down in many authorities to the effect that, when the object of the cross-examination is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge; and, unless abused, its exercise is not the subject of review. See Langley v. Wadsworth, 99 N. Y. 63, 1 N. E. 106. Hence we find no error in the trial court's ruling on this point.

What we said about the discretion of the court in matters of cross-examination applies with equal force to appellant's assignment No. 9. Here the witness whose cross - examination is claimed to have been erroneously limited is Sanford Galvin. The testimony sought to be elicited was merely for the purpose of testing the memory of the witness concerning such a purely collateral matter as the disposition of Gordon's car after the offense. The court was, without question,

442

within its reasonable exercise of discretion in limiting the cross-examination of the witness.

 There are three distinct assignments of error (Nos. 10, 11, and 12), each based upon the refusal of the court to strike out, on motion of defendant, certain testimony offered by the state on rebuttal. No. 10 involves testimony given by the witness Pearl B. Harvey. No. 11 is concerned with a motion to strike testimony of the witness Henry Wenzel. No. 12 assigns as error the court's admission on rebuttal of the testimony of Elizabeth Walters, as to whether or not she drank intoxicating liquors, and whether or not Gordon gave her any liquors, and whether Gordon treated her in the manner of a gentleman. We are taking up the assignments together simply because the same point is involved in each of them, to wit, the court's discretion in allowing or disallowing rebuttal of matters rather remotely connected with the case in chief, or matters tending to contradict statements brought out by the state in the cross-examination of the defendant. It may be that, in the strictest sense of the term, some of the facts elicited were not rebuttal evidence; but most courts, in their proper discretion, allow a wide latitude in rebuttal. There is no question that the general character of the testimony involved in the three assignments tended to meet a pertinent point in issue. Rebuttal evidence, according to reliable authorities, need not completely and entirely contradict the evidence of the defense, if it has a tendency to contradict or disprove it. Mitchell v. State, 133 Ala. 65, 32 So. 132; People v. Emerson, 130 Cal. 562, 62 P. 1069; State v. Yetzer, 97 Iowa, 423, 66 N. W. 737. We believe that the evidence in question meets this broad requirement, and was properly admitted, within the discretion of the court.

 We find no merit in assignment No. 5 to the effect that the verdict of the jury is contrary to the evidence. The verdict, on the contrary, is supported by an abundance of evidence. The testimony of Ross Moon, to mention only one of the witnesses, shows that, when Capt. Gordon alighted to the sidewalk from his car,

this witness had just stepped from the door of South-worth's store, and that McNeil, the defendant, stepped up behind the deceased, and with his left hand he took hold of the deceased's left arm and turned him around, or that Gordon turned around; that thereupon the defendant struck Gordon, and continued to strike him on the head and face until he fell, and after he fell, with a gun which the defendant has described as a .44 or .45 caliber pistol. This witness was about eight feet away from the scene of the trouble, and is corroborated by other witnesses as to the actual strik-ing of the deceased by the defendant, who, himself, admits that he struck Gordon twice on the face with the weapon.

There is no evidence in the record showing that the violence of the defendant was inflicted in neces-sary self-defense, other than the bare statement of the defendant himself that Gordon pointed a gun at him, and that the defendant took the weapon from him and beat him with it. The jury heard the defendant's story and rendered their verdict upon all the evidence. It is a well-settled rule of law in this state, in criminal cases, that, when there is any substantial evidence to support the verdict, the evidence will not be weighed on appeal. State v. Boyle, 49 Nev. 386, 248 P. 48. We do not deem it necessary further to analyze the transcript. There was not only substantial evidence to sustain the verdict, but we believe that any other verdict could not have been reasonably explained. Neither do we find that the ver-dict of the jury was contrary to law. Section 11266, Nevada Comp. Laws 1929, provides that: "No judg-ment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscar-riage of justice, or has actually prejudiced the defend-ant, in respect to a substantial right."

After carefully examining the record before us, we are of the opinion that the verdict is eminently just under the evidence, and that the defendant was not in any manner prejudiced in respect to a substantial right.

For the reasons stated, the judgment and order denying motion for new trial must be affirmed.

It is so ordered.

DUCKER, J., being unable to participate because of illness, the Governor designated Hon. THOMAS F. MORAN, Judge of the Second Judicial District Court, to act in his place and stead.