Keith Martin SCHWENKE,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–273.

Supreme Court of Wyoming.

Feb. 6, 1989.

Steven E. Weerts, Sr. Asst. Public Defender, Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Karen A. Byrne, and Paul S. Rehurek, Asst. Attys. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

A jury convicted appellant Keith Schwenke of taking indecent liberties with his thirteen-year-old son. He now challenges the process by which that jury was selected and asserts as error a number of the trial court's evidentiary decisions.

We will affirm.

Appellant states the issues on appeal as follows:

## I.

The trial court improperly conducted voir dire by pressuring jurors to ignore their biases and prejudices and erroneously refused, on three occasions, to excuse jurors for cause after they expressed bias or prejudice against the accused or against serving in a case of this nature.

## II.

The trial court committed plain error by allowing a witness to testify for the sole purpose of prejudicing appellant's right to a fair trial.

## III.

The trial court erred by allowing state's Exhibit No. 1 to go to the jury room.

## IV.

The trial court erred by allowing uncharged evidence of prior sexual contact to reach the jury.

Keith Schwenke and his son shared an apartment at the Pioneer Apartments in Rawlins, Wyoming. At about 8:00 p.m. on March 16, 1987, fourteen-year-old Larry Lascano entered a storage area adjacent to the Schwenke apartment. Lascano testified that, while gathering some cleaning supplies from the storage room, he heard moaning and groaning noises which prompted him to look through a partially blocked window into appellant's bedroom. There, he claimed, he saw appellant laying face down on his son's back. Both the Schwenkes were naked, and appellant was repeatedly raising and lowering his hips over the child's buttocks. Lascano then ran out of the storage room, encountering his sixteen-year-old sister, Lucy, and her twelve-year-old companion, Nicole Trujillo. When the girls expressed disbelief at his description of what he had just witnessed, they went to the storage room so they could look through the window themselves. Both girls testified that they did so, and independently corroborated the boy's story.

The children then alerted Lascano's sister-in-law. Although she never visually confirmed their allegations, she testified that she heard moaning noises coming from the storage area and relayed the story to the children's mother, Lucille Lascano, who called the police.

Officers Omen and Dixon of the Rawlins City Police responded to the call and, on the basis of their interview with the Lascano and Trujillo children, took appellant's son into protective custody. Two days later a criminal complaint was issued, charging appellant with incest, a violation of W.S. 6-4-402 (June 1983 Repl.). Subsequently, the state dropped that charge, electing to prosecute appellant under W.S. 14-3-105 (July 1986 Repl.), taking indecent liberties with a minor. A jury found him guilty of that offense, and on October 15, 1987, the trial court sentenced appellant to a term of seven to nine years in the Wyoming State Penitentiary.

## I. VOIR DIRE

■ A primary purpose of the voir dire inquiry is to determine whether prospective jurors have such prejudices or biases as would interfere with a fair and impartial decision. *Ostrowski v. State*, 665 P.2d 471, 488 (Wyo.1983). Because the trial court can more clearly observe the demeanor and responses of the panel during that inquiry, we defer to its judgment as to whether such prejudices or biases exist. *Summers v. State*, 725 P.2d 1033, 1040-41 (Wyo. 1986). See also *Smethurst v. State*, 756 P.2d 196 (1987). Appellant asks us to depart from our usual deference, contending that the trial court manipulated three jurors so as to camouflage prejudices which would subject them to a successful challenge for cause. The record indicates appellant challenged those jurors for cause, but it also reveals he accepted the jury as finally empaneled. *Lee v. State*, 743 P.2d 296, 298 (Wyo.1987). Accordingly, we must review any improprieties found in the jury selection process according to a plain error standard. *Gresham v. State*, 708 P.2d 49, 55 (Wyo.1985).

To determine whether the plain error standard has been met, we apply a three-part test. First, this court must be able to discern unequivocally from the record what occurred at trial without resort to speculation. Second, appellant must demonstrate that what occurred constitutes a clear and obvious violation of a clear and unequivocal rule of law. Finally, that violation must have adversely affected some substantial right of appellant. *Britt v. State*, 752 P.2d 426, 428 (Wyo.1988).

The transcript here is clear with regard to the voir dire of three of the panel members of which appellant now complains. Prospective juror Martinez initially indicated that her strong feelings about child molestation might adversely affect her ability to judge the facts. She believed that children would not lie about such things. The trial court advised her that strong feelings would not disqualify her as a juror, provided she could impartially hear and weigh the evidence. In response, Ms. Martinez revealed that she would not, in every instance, presume a child's testimony to be true. She later suggested that her decision in favor of either appellant or the state would be based upon the amount of factual and testimonial substantiation offered to support their respective stories. The trial court denied appellant's challenge for cause.

Prospective juror Conway suggested that she might improperly infer appellant's guilt from the fact that he was being tried. The trial court explained that, despite the jury's strong feelings about child abuse, it must presume appellant innocent until the state has proved all the elements of his guilt beyond a reasonable doubt. When Mrs. Conway stated that she could hold the state to its burden of proof, the trial court refused to excuse her for cause.

Appellant's challenge of prospective juror Gerstner arose after a confusing dialogue which seemed to indicate her intention to apply a preponderance of the evidence standard of proof to the state's case.

Noting that appellant's questions may have caused her confusion, the trial court attempted to clarify the reasonable doubt standard for Ms. Gerstner. Then, upon her assurance that she could follow the appropriate standard, the trial court denied appellant's motion to disqualify her for cause.

■ The record is clear concerning the trial court's conduct during the voir dire of these three panel members. However, appellant must establish that this conduct constitutes a clear and obvious transgression of an unequivocal rule of law. The scope of the voir dire examination lies within the discretion of the trial court, and a challenge for cause permits the rejection of prospective jurors only on "a narrowly specified, provable and legally cognizable basis of partiality * * *." *Engberg v. State*, 686 P.2d 541, 548, 549 n. 6 (Wyo. 1984). The limited grounds which will support a successful challenge for cause are set out in W.S. 7–11–105 (June 1987 Repl.) and W.S. 1–11–203 (1977).[1] Those statutes provide, in pertinent part:

W.S. 7–11–105

(a)(ii) That he has formed or expressed an opinion as to the guilt or innocence of the accused, or is biased or prejudiced for or against the accused.

W.S. 1–11–203

(a)(vi) Having formed or expressed an unqualified opinion or belief as to the merits or the main question of the action. The reading of newspaper accounts of the subject matter before the court shall not disqualify the juror either for bias or opinion;

(a)(vii) The existence of a state of mind in the juror evincing enmity or bias for either party.

■ To determine whether a prospective juror exhibited such bias or prejudice as would require the trial court to dismiss him for cause, we must examine the prospective juror's voir dire testimony as a whole, without placing undue emphasis on any single response. *Patterson v. State*,

1. W.S. 7–11–105(b) (June 1987 Repl.), provides that the challenges for cause which are available to a civil litigant shall also be available in criminal cases. W.S. 1–11–203 (1977) sets forth the challenges for cause in civil litigation.

691 P.2d 253, 255 (Wyo.1984), cert. denied, sub nom. *Spoon v. Wyoming,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985). A speculative bias will not result in a successful challenge if the trial court determines that the prospective juror is able to decide the case solely on the evidence presented and according to the trial court's instructions on the law. *Summers,* 725 P.2d at 1039. The trial court's determination in this regard is an exercise of discretion, and we will not disturb that discretion unless appellant demonstrates that it was abused. *Gresham,* 708 P.2d at 55–56; see also *Martin v. State,* 720 P.2d 894, 896–97 (Wyo.1986) (defining judicial discretion).

 In the present case, none of the three panel members can be said to have formed or expressed an opinion concerning appellant's guilt. The trial court could reasonably conclude that the three prospective jurors would execute their duties as jurors in accordance with the law and the evidence before them. We hold, therefore, that appellant has failed to demonstrate that the trial court abused its discretion by denying appellant's challenges for cause. There was no plain error.

That is not to say, however, that this court is entirely comfortable with such a deferential standard of review; nor is it to say that the trial court in this case should escape criticism. Both the decisions of this court and the statutory pronouncements of our legislature have recognized the vital role of voir dire in the fact-finding process. The validity of any factual determination depends on whether the fact-finder is, in truth, impartial. We fear, however, that all too often the dialogue of voir dire is less a search for this impartiality than it is a series of coached responses. In this case we perceive that problem arises not out of the trial court's intention, but out of its resort to an ineffective method of inquiry.

 We envision the duty of the trial court to be two-fold with respect to its supervision of voir dire. It has the "duty to *ascertain* whether or not an expressed position by a prospective juror—bias or prejudice or otherwise—was made with full *understanding* of the context of the posi-

tion in the scenario of a jury trial." *Gresham,* 708 P.2d at 56. (emphasis added.) That is, it must inform the panel regarding the application of the appropriate legal standards for impartial decision-making, and it must determine whether the prospective juror is capable of conforming to those standards. We take no issue in this case with the trial court's efforts to clarify the law for prospective jurors. However, its less than neutral exploration of those personal feelings that might betray a prospective juror's inability to function impartially treads dangerously close to prompting and suggesting the answers finally received. The right to an impartial jury is meaningless if guaranteed only by a ritual response.

The district court's examination of the prospective jurors, following appellant's challenges, consisted largely of leading questions. It is well known by judges and trial practitioners that such questions function both rhetorically and psychologically to impose the questioner's control over the response. See 3 F. Busch, Law and Tactics in Jury Trials § 372 at 549 (1960); 1 A. Ginger, Jury Selection in Civil and Criminal Trials § 8.80 at 481 (2d ed. 1984) (affidavit of psychologist Dr. Craig Haney regarding voir dire procedures); J. Jeans, Trial Advocacy § 13.23 at 315–16 (1975); 1 S. Schwitzer, Cyclopedia of Trial Practice § 194 at 520 (3d ed. 1970); 1 Am.Jur.Trials § 11 at 14 (1964). They are the tool of advocacy, not neutrality. They are particularly destructive to the effective communication so crucial to voir dire when they are repeated to a series of challenged prospective jurors. At the very least, the panel learns it may avoid airing its partiality by resort to a pat response; at worst, the panel may assume that the trial court and our system of justice expects it to do so.

When Ms. Martinez indicated her tendency to accept any child's testimony relating to molestation, the trial court asked if she would similarly believe any child's claim "that the sky was falling." She responded that she would not, but noted that a case alleging child abuse was a different matter which made her doubt her ability to remain

impartial. The following exchange then took place:

THE COURT: * * * Are you telling me that if a kid said he was hurt, you would immediately criticize the person he pointed the finger at * * *.

MS. MARTINEZ: No.

THE COURT: So?

MS. MARTINEZ: I will try to listen to the other person's side of the story.

Voicing her concern that the emotionally charged nature of the offense might affect her performance as a juror, Mrs. Conway revealed an additional tendency to convict based upon the state's having seen fit to bring appellant to trial. Instead of inquiring further, the trial court lectured her on her duty to presume appellant innocent until proved guilty beyond a reasonable doubt. Despite her continued expressions of doubt as to whether she could fulfill that duty, the trial court suggested that a juror should not "feel so harsh that we'll just decide somebody did it, without proof." In response, she indicated that she could follow the law regarding the state's burden of proof.

In its voir dire of both Ms. Martinez and Mrs. Conway, the trial court appeared to be more concerned with eliciting a particular response than it was with determining the potential effects their feelings might have on the fact-finding process. The comments of prospective juror Gerstner suggest that the other prospective jurors perceived this to be the case. When asked if she would acquit appellant if the state could not prove his guilt beyond a reasonable doubt, Ms. Gerstner expressed some hesitancy about offering her qualified, though affirmative, response. Later, after appellant's rephrasing of that question, she answered, "Well, I know what I should say, but what the truth is, is that I would probably have to go the other way."

We cannot say that every prospective juror would exhibit the same inclination, courage or forthrightness to distinguish their true feelings from what might be perceived as the trial court's desired response. Neither can we say that the trial court was arbitrary and capricious in its determination that these prospective jurors were fully informed of their duties under the law, and that they could actually overcome any partiality in the exercise of that duty. Nowhere are we as frustrated by our inability to see beyond the lifeless pages of the trial transcript as we are when the fundamental right to a fair and impartial trial is at issue. Consequently, although under the controlling standard of review the record evidences no error, we encourage our trial courts to adopt a method of inquiry which will in the future promote, not tend to inhibit, the full expression of human emotions and assure the neutral exploration of honestly expressed feelings of prospective jurors during the jury selection process.

## II. TESTIMONY AS PLAIN ERROR

Robert Johnson was the principal of the elementary school attended by appellant's son. Johnson testified that he had been notified by an employee of the Wyoming Division of Public Assistance and Social Services (D–PASS) that the child had been taken into protective custody. Apparently, D–PASS feared that appellant would attempt to contact his son and remove him from school. Johnson testified further that on March 17, 1987, appellant came to the school and asked to see his son. When denied that opportunity, appellant allegedly stated, "There's a nigger in the wood pile someplace, and if I find the son-of-a-bitch, I'll blow him away. I've got nothing to lose." With regard to Johnson's testimony, appellant takes issue only with the introduction of that alleged statement. Because appellant failed to raise a timely objection to the introduction of this testimony, we must employ the plain error analysis set forth above.

The record is clear as to what occurred at trial. Appellant contends, however, that the contested portion of Johnson's testimony was totally lacking in relevancy and so prejudicial that it was inadmissible under any theory. The state asserts that the evidence was relevant to show the crime was committed and that appellant committed the crime. Such is the

case, the state argues, because the conduct and demeanor of the accused after the crime tend to show a guilty mind. We disagree. Nothing in appellant's alleged outburst to Johnson is probative of any fact material to this prosecution. The admission of such testimony, therefore, violates a clear and unambiguous rule of law. See also W.R.E. 402 (irrelevant evidence is inadmissible).

 Such a violation does not require reversal, however, unless the violation seriously affects the fairness and integrity of the judicial proceedings. *Jones v. State,* 580 P.2d 1150, 1153 (Wyo.1978). To warrant reversal under the plain error standard explained above there must be a reasonable possibility that, in the absence of the error, a defendant would receive a more favorable verdict. *Nimmo v. State,* 603 P.2d 386, 395 (Wyo.1979); and *Hoskins v. State,* 552 P.2d 342, 351 (Wyo.1976), cert. denied, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Appellant put forth no evidence in his behalf. When balancing appellant's case against the unimpeached testimony of the prosecution's three eyewitnesses, it would be unreasonable to assume that the jury could have concluded otherwise. There was no plain error.

### III. PERMITTING TESTIMONIAL EVIDENCE TO GO TO THE JURY ROOM

 On the cross-examination of Larry Lascano, defense counsel asked whether he had "gone over" his testimony with the police and the prosecuting attorney. He later questioned the boy about some discrepancies between his testimony on direct examination and his testimony at appellant's preliminary hearing. In order to rehabilitate his witness, the prosecutor offered the written statement that Lascano had given the police on the evening of the alleged crime. The trial court properly admitted that statement over appellant's objection as a "prior consistent statement offered to rebut an implied charge of recent fabrication or improper influence," as permitted by W.R.E. 801(d)(1)(B). Rather than letting the jury examine the exhibit at the time, however, the trial court indicated it would permit them to view it in the jury room.

Appellant's failure to object when the trial court announced that plan demands that we again apply the plain error standard of review described above. Appellant has failed to meet the threshhold requirement of that standard. The record does not show that Lascano's statement was taken to the jury room. Even were we to assume that happened, appellant has not shown that the trial court violated a clear and unequivocal rule of law. This court's decision in *Schmunk v. State,* 714 P.2d 724 (Wyo.1986), expresses our concern that such a practice effectively allows for the repetition of testimony which might cause a jury to unduly overemphasize that evidence. In *Schmunk,* however, we were faced not only with the peculiar dangers posed by the repeated viewing of videotaped testimony, but with a videotape containing inadmissible material. *Id.* at 732–33, 744. Although we have ruled upon the propriety of taking videotaped testimony to the jury room, we have never expressly prohibited that practice with regard to written statements. As an alternative to presenting the evidence in open court, videotaped testimony has been permitted to go to the jury room upon stipulation of the parties and where the trial court supervises the playing of those tapes. *Chambers v. State,* 726 P.2d 1269, 1275–76 (Wyo.1986).

 Where the exhibit is merely a brief and undetailed summary of testimony properly admitted in open court, as here, it is not necessarily plain error to permit that exhibit to go to the jury room. As a general rule, such matters are left to the discretion of the trial court. See *Stone v. State,* 745 P.2d 1344, 1349–50 (Wyo.1987). Additionally, appellant is not prejudiced where the exhibit is otherwise admissible and where the state has presented a significant amount of other evidence to support the guilty verdict. *Id.* Here, Lascano's more detailed and vivid testimony on the witness stand was corroborated by two additional eyewitnesses. The rather sketchy statement that purportedly went to the jury

room could have had only a negligible additional impact upon the verdict. No plain error occurred with respect to that statement.

## IV. EVIDENCE OF APPELLANT'S PRIOR BAD ACTS

 On his direct examination of appellant's son, the prosecuting attorney attempted to elicit testimony that appellant had touched the child's genitals on March 15, 1987. Appellant objected, noting that he had been charged concerning his conduct on March 16. He asserted that the introduction of evidence concerning his prior conduct would be improper and prejudicial. The trial court initially overruled that objection on the ground that the two acts constituted a continuing course of conduct. After some discussion, however, the trial court suggested an alternative basis for admitting the evidence, and appellant directed a specific objection to that suggested basis. The trial court overruled that objection on the ground that the evidence was admissible under W.R.E. 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Appellant premises error on that ruling.

Earlier in the trial appellant had advanced his explanation for the acts observed by the Lascano and Trujillo children on March 16. Appellant suggested, during his cross-examination of Larry Lascano, that he and his son were merely wrestling prior to bathing. By such means he denied having the requisite state of mind to constitute the offense charged. Under such circumstances testimony regarding his acts on March 15 was both relevant and necessary to the state's case, tending to establish that he knowingly took indecent liberties with his son.[2] The state did not offer any other evidence relating to this element of the crime; hence, the son's testimony about the March 15 incident was not merely cumulative. Consequently, it was not

unfairly prejudicial to appellant, and the trial court properly overruled his objection. Although the record would perhaps benefit from a brief explanation of how the court weighed the probative value of this evidence against countervailing factors, it is sufficient in this instance to say we find no abuse of discretion in the trial court's permitting this testimony. See generally *Coleman v. State,* 741 P.2d 99, 104–05 (Wyo.1987).

AFFIRMED.

---

**2.** W.S. 14–3–105 (July 1986 Repl.), provides in part:

Any person knowingly taking immodest, immoral or indecent liberties with any child

or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony....