COREY D. THOMPSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 23238

April 27, 1995 894 P.2d 375

*Morgan D. Harris,* Public Defender, *Marcus D. Cooper,* Deputy Public Defender, and *Ralph E. Baker,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Gerald Gardner,* Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

*Per Curiam:*

A jury convicted appellant Corey D. Thompson ("Thompson") of four counts of robbery with use of a deadly weapon. Thompson appealed, raising several assignments of error; however, only the trial court's refusal to excuse prospective juror number eighty-nine for cause constitutes reversible error.

"It is difficult to conceive of a more effective obstruction to the judicial process than a juror who has prejudged the case." In re Michael, 326 U.S. 224, 228 (1945) (Black, J.). We conclude that prospective juror number eighty-nine's beliefs diminished Thompson's chance for a fair trial and, therefore, according to NRS 16.050, prospective juror number eighty-nine should have been excused for cause.[1]

The following relevant discourse transpired during voir dire:

> THE COURT: Do you think you could be a fair juror in this case?
> PROSPECTIVE JUROR NO. 89: I'm not sure. I don't know.
> THE COURT: Why is that?
> PROSPECTIVE JUROR NO. 89: I don't know. I'm just like this guy that was over here. I judge a lot of people by the way they look, talk, walk, dress, everything. . . .
> . . . .
> THE COURT: . . . . Do you think that the defendants in this case look guilty?
> PROSPECTIVE JUROR NO. 89: Kind of, yeah.
> THE COURT: So, you think you'd have a tendency—
> PROSPECTIVE JUROR NO. 89: Probably.
> THE COURT: So, they start off with a strike against them because of their appearance?

---

[1]NRS 16.050 states, in relevant part:

> 1. Challenges for cause may be taken on one or more of the following grounds:
> . . . .
> (f) Having formed or expressed an unqualified opinion or belief as to the merits of the action, or the main question involved therein . . . .
> (g) The existence of a state of mind in the juror evincing enmity against or bias to either party.

PROSPECTIVE JUROR NO. 89:   Um hum.

. . . .

MR. COOPER [Thompson's attorney]:   If the shoe were on the other foot, if you were seated over here, would you want a person who has these kinds of preconceived notions—

PROSPECTIVE JUROR NO. 89:   No, I wouldn't.

. . . .

MR. COOPER:   Would you be afraid that person might unduly attach significant weight to things that weren't really that important in making the decision?

PROSPECTIVE JUROR NO. 89:   Yeah, I think so.

. . . .

MR. CHRISTOPHERSON [the attorney of Thompson's co-defendant]:   Now, if Mr. Moore were to take the stand and testified and didn't come off being real intelligent, would that affect your evaluation of his guilt or innocence?

PROSPECTIVE JUROR NO. 89:   That has nothing to do with him being a criminal. There's a lot of intelligent people who are criminals. There's a lot of college educated people who are criminals.

MR. CHRISTOPHERSON:   What has to do [sic] with him being a criminal?

PROSPECTIVE JUROR NO. 89:   He's guilty.

MR. CHRISTOPHERSON:   What factors in terms of your evaluation as [sic] first value make you think he's guilty?

PROSPECTIVE JUROR NO. 89:   Well, right now I'm not sure.

The court then asked prospective juror number eighty-nine if he had formed an opinion as to the guilt or innocence of Thompson, and the prospective juror replied, "No, I haven't." Subsequently, Thompson's attorney requested that prospective juror number eighty-nine be excused for cause. The district court denied the request, reasoning that it was unnecessary to excuse prospective juror number eighty-nine for cause because he answered the final question—whether he had an opinion as to guilt or innocence of Thompson—in the negative.

Prospective juror number eighty-nine agreed that Thompson "looks guilty" and later specifically said that although he could not articulate the reasons why, Thompson was guilty. This belief demonstrates that prospective juror number eighty-nine should have been excused for cause because he formed or expressed an unqualified opinion as to the merits of the action. *See* NRS 16.050(1)(f).

In addition, prospective juror number eighty-nine agreed that

Thompson started off with a strike against him because of his appearance. Finally, and most disturbing, prospective juror number eighty-nine agreed that he would not want to be seated in the defendant's chair with a person like himself on the jury. These beliefs demonstrate that prospective juror number eighty-nine should have been excused for cause because his state of mind evinced enmity against Thompson. *See* NRS 16.050(1)(g).

We also conclude that the district court erred by looking to prospective juror number eighty-nine's final assertion—that he had not formed an opinion as to the guilt or innocence of Thompson—as the primary reason for deciding that he should not be excused for cause. In Bryant v. State, 72 Nev. 330, 305 P.2d 360 (1956), this court stated:

> "It is not enough to be able to point to detached language which, alone considered, would seem to meet the statute requirement, if, on construing the whole declaration together, it is apparent that the juror is not able to express an absolute belief that his opinion will not influence his verdict."

*Id.* at 334-35, 305 P.2d at 362 (quoting People v. McQuade, 18 N.E. 156, 162 (N.Y. 1888)).

Therefore, simply because the district court was able to point to detached language that prospective juror eighty-nine could be impartial does not eradicate the fact that he previously demonstrated partial beliefs, capped by an unequivocal statement that Thompson was guilty.

The case at bar can be distinguished from Snow v. State, 101 Nev. 439, 446, 705 P.2d 632, 637-38 (1985), *cert. denied,* 475 U.S. 1031 (1986), and preceding authority, where removal for cause was not necessary when the jurors unequivocally stated that they could put aside their previous opinions and impartially reach a verdict. Prospective juror number eighty-nine stated that he had not formed an opinion as to Thompson's guilt or innocence only seconds after stating that Thompson was guilty. Consequently, this case is much more similar to *Bryant,* where this court concluded:

> "It may be true that on cross-examination his [the prospective juror's] answers tended to contradict his previous statements but we believe that his very self-contradictions do not increase his fitness as a juryman."

*Bryant,* 72 Nev. at 334, 305 P.2d at 362 (quoting State v. McNeil, 53 Nev. 428, 440, 4 P.2d 889, 892 (1931)).

We also conclude that it was prejudicial error that prospective

juror number eighty-nine was not excused for cause. At the conclusion of voir dire, the defense had exhausted all four of its peremptory challenges. Therefore, if the defense had used one of its peremptory challenges to excuse prospective juror number eighty-nine, then a juror that was unacceptable to the defense would have remained on the jury. *See* State v. Fouquette, 67 Nev. 505, 519, 221 P.2d 404, 412 (1950), *cert. denied,* 342 U.S. 928 (1952).

Accordingly, we reverse Thompson's conviction and remand this case for a new trial.

SHEARING, J., dissenting:

I would affirm the conviction. I do not believe that the complete voir dire of Prospective Juror 89 demonstrates that he could not be a fair and impartial juror. In fact, his responses to questioning on voir dire reveal that Juror 89 was only perhaps more frank than other jurors—not that he could not be fair and impartial. Juror 89's initial testimony was that he thought the defendant looked guilty. However, he later stated, "I judge a lot of people by the way they look, walk, talk, dress and everything. And then wait until they open their mouth and then I form another opinion. I see a lot of people every day and do that." He explained that he evaluates people routinely while at work in the casino, but also changes his opinion of them as he learns more about them. Juror 89 also stated his belief that most people do what he does. Further, he stated that he had not formed a view as to the guilt or innocence of the defendant.

The quote in the majority's opinion in which the prospective juror says, "[h]e's guilty," is taken out of context. When read in context, it is clear that that statement was not meant to be an expression of his opinion regarding the guilt of the defendant. The dialogue on voir dire proceeded as follows:

> MR. CHRISTOPHERSON: Now, if Mr. Moore were to take the stand and testified and didn't come off being real intelligent, would that affect your evaluation of his guilt or innocence?
>
> PROSPECTIVE JUROR NO. 89: That has nothing to do with him being a criminal. There's a lot of intelligent people who are criminals. There's a lot of college educated people who are criminals.
>
> MR. CHRISTOPHERSON: What has to do with him being a criminal?
>
> PROSPECTIVE JUROR NO. 89: He's guilty.
>
> MR. CHRISTOPHERSON: What factors in terms of your evaluation as first value make you think he's guilty?

PROSPECTIVE JUROR NO. 89: Well, right now I'm not sure.

THE COURT: [Prospective Juror 89], have you formed an opinion as to the guilt or innocence of either the defendants at this point?

PROSPECTIVE JUROR NO. 89: No, I haven't.

Clearly, the prospective juror was saying he would only consider a person a criminal if he were guilty of a criminal charge, not that he has prejudged the case.

When viewed in context, none of the prospective juror's statements demonstrates that he would be anything but fair and impartial. Thus, it is easy for me to see why the district court believed that the prospective juror was honest and open-minded and could be a fair and impartial juror. This court should defer to the finding of the district court judge who had the opportunity to both observe the prospective juror's demeanor, and to listen to the way the juror answered questions. Schwenke v. State, 768 P.2d 1031, 1033 (Wyo. 1989) (stating that because trial court can more clearly observe the demeanor and responses of the jury panel during voir dire, the appellate court defers to its judgment).

The defendant's conviction should be affirmed.